GEORGE PUTNAM, administrator, *vs.* FRANKLIN H. STORY & others.

Suffolk.   Nov. 1880; Sept. 6, 1881. — Jan. 30, 1882.   C. ALLEN, J., absent.

A will gave to the testator's widow the use and improvement of the testator's real and personal estate during her life; and directed that, at her decease, all his estate should be converted into money, the income to be paid to his daughter, and at her decease the principal to be divided equally among her heirs at law. *Held*, that the daughter's children took during her life an interest in the fund which they could assign and which would pass to an assignee in bankruptcy. *Held, also*, that an assignment by a child of his interest in the fund, although unrecorded and although no notice was given to the person in charge of the fund, took precedence of a subsequent assignment by him which was recorded and of which notice was given.

A preëxisting debt is a good consideration for an assignment of a chose in action.

A voluntary assignment of a chose in action not affecting creditors, made in good faith, is good as against a subsequent assignee for value.

If a will provides that, after the decease of the testator's wife, who is the executrix, and to whom the use and income of his estate is given during her life, all the estate shall be converted into money, and does not in terms specify the person who shall do this, the power to sell the real estate left by the testator is by necessary implication given to the administrator *de bonis non* with the will annexed.

A testator gave the use and income of his estate to his wife, who was appointed executrix of the will, during her life, and directed that, at her decease, all his estate should be converted into money, and invested in a certain manner

for the benefit of his daughter, for her life, and on her decease be divided among her heirs. The real estate held by the testator at his death was sold by the executrix under the authority of a resolve of the Legislature; and, as a substitute therefor, other real estate was purchased by her with the proceeds. The resolve provided that she should invest the proceeds in the manner prescribed in the will, for her use during her life, and on her decease for the uses and purposes set forth in the will. Upon making the purchase of the substituted estate, she executed a declaration that she held said estate in the said manner and for said uses and purposes. *Held*, that she took only a life estate in the land purchased by her; that it was held in the same manner and for the same purposes as the land for which it was substituted; and that the power of the administrator *de bonis non* to sell attached and applied to it. *Held, also*, that a deed by one of the heirs of his interest in the land purchased under said resolve, operated in equity as an assignment of his interest in the money received by the administrator *de bonis non* for the sale of the land.

BILL IN EQUITY, filed December 24, 1879, by the administrator *de bonis non* with the will annexed of William Burrows, against Franklin H. Story, William G. A. Drake, Emma Geller, Albert C. Woodworth, William B. Bowles, Robert C. M. Bowles, Charles S. P. Bowles, Albert G. Bowles, William F. Stetson, Henry C. Stetson and Frances Rogers, for the instructions of the court. Hearing before *Endicott*, J., who reported for the consideration of the full court the following case, such decree to be entered as law and justice might require:

William Burrows died on October 19, 1837, seised of real and personal estate, and leaving a will, which was duly admitted to probate, appointing his wife executrix, and containing the following clauses:

"Secondly. I give to my beloved, affectionate wife, Betsy Burrows, the rent, income, interest, use and improvement of all my estate, real, personal or mixed, of what kind, name and nature soever, for and during the term of her natural life.

"Thirdly. My will is that at the decease of my said wife all my estate should be converted into money, and one third of the net proceeds thereof deposited in the Massachusetts Hospital Life Insurance Company in the name of Mrs. Mary Thompson, wife of Mr. William Thompson, upon a strict trust, the interest of which third part is to be quarter-yearly paid to the said Mary Thompson, for and during the term of her natural life, and, at her decease, the capital sum to be equally divided among the heirs at law of the said Mary Thompson, share and share alike.

"Fourthly. The residue, being the other two thirds of the net proceeds of the sales of all my estate, I will to be deposited in like manner in the Massachusetts Hospital Life Insurance Company, in the name of my daughter Frances Bowles, wife of William Bowles, upon a strict trust the interest of which in like manner to be quarterly paid to the said Frances, for and during the term of her natural life, and at her decease the capital sum to be equally divided among the heirs of my said daughter, share and share alike."

Mrs. Burrows entered upon and enjoyed the estate of her husband. On April 25, 1838, the Legislature passed a resolve authorizing Mrs. Burrows to sell the real estate of her husband "and the proceeds thereof to invest in the manner prescribed in said will of said William Burrows (for the investment of the proceeds of his said real estate) for the use of said Betsy Burrows, during her life; and, on her decease, for the uses and purposes in said will limited and set forth." By virtue of this resolve, Mrs. Burrows sold the real estate of her husband, and, on February 12, 1845, invested a part of the proceeds in a parcel of land with a dwelling-house thereon. She also executed a declaration of trust declaring that the same was held by her "subject to the same uses and trusts and for the same ends and purposes" as were the lands so sold by her.

Mrs. Burrows died in 1860, intestate ; and on December 1, 1860, the plaintiff was appointed administrator of her estate, and also administrator *de bonis non* with the will annexed of the estate of William Burrows. In his latter capacity, the plaintiff became possessed of certain personal property, one third of which was paid over to the heirs at law of Mary Thompson, who had died before Mrs. Burrows; and the other two thirds were deposited in the Massachusetts Hospital Life Insurance Company upon two policies, by the terms of which the income was to be payable to Frances E. B. Stetson (formerly Frances Bowles) during her life, and after her death the principal was to be paid to the administrator with the will annexed of William Burrows for the heirs of Mrs. Stetson.

The real estate which was purchased by Mrs. Burrows was used by her as a homestead until her death, and at the time of her death was also occupied by Mrs. Stetson, who, upon the death of

her mother, purchased the interest of the children and heirs of Mary Thompson in said real estate, taking a quitclaim deed of it from them, and she continued to occupy the same as her homestead until her death in December 1878, with the knowledge of her husband and of all her children. At the time of the death of Mrs. Burrows, her sole heirs at law and next of kin were Mrs. Stetson and the children of Mary Thompson.

Mrs. Stetson had, at the time of her mother's death, seven children, all of whom are still living, and are and were at the time of her own death her heirs at law; namely, Charles S. P. Bowles, Robert C. M. Bowles, William B. Bowles, Albert Gordon Bowles, William F. Stetson, Henry C. Stetson and Frances Rogers.

On the death of Mrs. Stetson, the Massachusetts Hospital Life Insurance Company paid over to the plaintiff the sum of $7056, being the amount deposited by the plaintiff, and the plaintiff thereupon paid over to William F. Stetson and Frances Rogers, two of the heirs of Mrs. Stetson, their respective shares, namely, one seventh each of said sum of money; and the remaining five sevenths remain in his hands.

In 1859, the firm of Cushing Stetson's Sons & Company, (consisting of Cushing Stetson, husband of Frances E. B. Stetson, and William, Robert and Charles Bowles,) had failed in business and was largely indebted to one Emma Geller. In consideration of said indebtedness, William, Robert and Charles, together with Albert G. Bowles, on June 2, 1859, executed an assignment, with a covenant for further assurance, to Emma Geller, as security for the moneys advanced by her to the said firm, of all their interest which they then had, or which they might afterwards have, in the estate of their grandfather, William Burrows. The debt of said firm has in no part been paid, and exceeds the amount claimed by Geller in this proceeding. But none of the debt for which this assignment was made was due from Albert G. Bowles, and there was no consideration for his signing said instrument. The assignment has not been recorded, and notice thereof was not given to the plaintiff until after he was notified of the assignments hereinafter referred to.

In 1872, Charles S. P. Bowles, Robert C. M. Bowles, William B. Bowles and Henry C. Stetson, doing business under the

name of Bowles Brothers & Company, became bankrupt, and Henry J. Stevens was appointed their assignee; and, in 1873, William F. Stetson quitclaimed to the assignee in bankruptcy of the firm, in discharge of a debt due to the firm from him, all his interest in a certain parcel of land, describing it by metes and bounds, it being in fact the parcel bought by Mrs. Burrows as above stated.

On June 24, 1879, the members of the firm and their assignee in bankruptcy conveyed, by an indenture containing mutual covenants, which it is unnecessary now to state, to the defendants Story and Drake, in trust for the benefit of the creditors of the firm, all the property of the firm, and all the separate real and personal estate, property, credits and effects of the members thereof.

In December 1878, after the death of Mrs. Stetson, Albert G. Bowles, who was then indebted to Albert C. Woodworth in the sum of $2000, borrowed of him the additional sum of $900, and gave him, as security for that and the preceding loan, an assignment of his rights under the will of William Burrows, and also a deed of his interest in any real estate which he had by virtue of the will of William Burrows.

The case was argued at the bar in November 1880, and was afterwards submitted on briefs.

*J. C. Gray*, ( *W. C. Loring* with him,) for Story and Drake.

*H. W. Putnam*, for Rogers, W. F. Stetson and H. C. Stetson, contended that the limitation to the heirs of Mrs. Stetson was a contingent remainder to persons who could not be ascertained until her death, and that her heirs apparent did not have an alienable interest until that event; and cited Fearne Rem. 289; 266; 1 Prest. Est. 75, 76; 2 Washb. Real Prop. (4th ed.) 562; *Manning's case*, 8 Rep. 94 *b*; *Lampet's case*, 10 Rep. 46 *a*; *Richardson* v. *Wheatland*, 7 Met. 169, 175; *Putnam* v. *Gleason*, 99 Mass. 454; *Johnson* v. *Whiton*, 118 Mass. 340.

*S. W. Trowbridge*, for Geller.

*G. L. Huntress*, for Woodworth.

MORTON, C. J.   The principal question, and one which underlies most of the other questions in the case, is whether the children of Frances Bowles took any interest, during the life of the testator's widow and of their mother, which was assignable.

It is clear that under the bequest those would take the estate who were heirs of Frances Bowles at her decease, so that her children did not, during her life, take a vested remainder which would descend to their heirs or representatives. Each took an interest in the nature of a contingent remainder, liable to be defeated by his death before his parent. But the question upon which the case turns is whether they took any interest which was assignable by them.

Under a devise of land, or a bequest of an equitable interest in a trust fund, to a man for his life, and at his death to such of his children as should survive him, it has been held that the children took a vested interest in a contingent remainder, which they could assign, and which would pass to their assignees in bankruptcy or insolvency. *Nash* v. *Nash*, 12 Allen, 345. *Dunn* v. *Sargent*, 101 Mass. 336. *Belcher* v. *Burnett*, 126 Mass. 230.

In such case, their enjoyment of the estate depends upon the contingency that they survive their father, but such contingency does not prevent their having a present vested right or interest which can be transferred, the assignee taking their right subject to the same contingency. Chancellor Walworth states the rule to be, that " where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession." *Moore* v. *Lyons*, 25 Wend. 119, 144. See also *Blanchard* v. *Blanchard*, 1 Allen, 223.

In the case of a devise or bequest to a man for life and at his death to his heirs, it is true that, if he has no children at the death of the testator, his heirs presumptive would not take a vested interest, because there is the contingency that they may be supplanted or displaced as heirs presumptive by the birth of children to the life tenant, and therefore that they may never take at all, even if they survive the life tenant. This was the case in *Putnam* v. *Gleason*, 99 Mass. 454, where the brothers and sisters of the life tenant, who had no children,

were her heirs, and it was held that the remainder was contingent until the death of the life tenant, when the estate vested in the brothers and sisters.

But whenever a child is born to the life tenant, such child is at once ascertained as a person who is to take under the devise or bequest if he survives his parent. His share may be cut down in quantity by the birth of brothers or sisters, but he cannot be displaced as an heir by any person, and the only contingency which affects his future possession of the estate is that he survive his parent. He has not a mere possibility, but a fixed right to take as purchaser under the devise or bequest, which can be defeated only by his death before his parent.

We are of opinion that he thus has a vested interest in a contingent remainder, which he can assign, and which will pass to an assignee in bankruptcy or insolvency, subject to the same contingency in the hands of the assignee as in those of the assignor. *Winslow* v. *Goodwin*, 7 Met. 363. *Gardner* v. *Hooper*, 3 Gray, 398.

Applying these principles to the case before us, it follows that the assignment by the children of Frances Bowles to Mrs. Geller was effectual to transfer the interests which they had at the time of the assignment, and, as all said children have survived their mother, entitles the assignee to their shares of the funds in the hands of the trustees, under the bequest we are considering.

It is contended that the assignment to Mrs. Geller, though prior in time, does not take precedence of the subsequent assignments to Story and Drake and to Woodworth, because it was not recorded, and because no notice was given to the person who held the funds under the will of William Burrows.

The interest of the assignors which they assigned was not an interest in real estate, and therefore the statutes as to recording deeds of real estate have no application. The will provides that the whole estate shall be converted into money, and gives to the remaindermen an interest in the fund thus formed. Their respective interests were merely choses in action; and it is settled in this Commonwealth that, in the absence of fraud, an assignment of a chose in action is good against a subsequent purchaser, though not recorded, and though

no notice is given to the debtor. *Thayer* v. *Daniels*, 113 Mass. 129, and cases cited.

The assignment to Mrs. Geller was in consideration of a pre-existing debt. This was a good consideration for the assignment by the debtors ; if the assignment by Albert G. Bowles was voluntary, it was binding upon him, and, being made in good faith and not affecting creditors, was good as against his subsequent assignee ; *Beal* v. *Warren*, 2 Gray, 447 ; and as the debt exceeds in amount the value of the interests of the four assignors in the trust fund, the above considerations dispose of the case so far. as their interests or shares are concerned.

The share of H. C. Stetson, he being one of the heirs of the life tenant, for the reasons above stated, passed to his assignee in bankruptcy, and was transferred to Story and Drake by the indenture of June 24, 1879. There can be no doubt that the transfer of property and mutual covenants of the parties to the indenture were a sufficient consideration for the execution of it by H. C. Stetson, though this is not material, as his interest in the trust fund had passed out of him, and would pass to Story and Drake, even if Stetson had not executed the indenture. These considerations dispose of all the questions presented to us concerning the distribution of the personal property now held by the plaintiff.

A question remains as to the disposal of the real estate which Mrs. Burrows held at the time of her death as a part of the estate of her husband. This real estate was held by Mrs. Burrows as a life tenant under her husband's will. It did not descend to her heirs at law so that they could transfer a good legal title. The clear directions of the will are, that all the estate shall be converted into money, and the proceeds distrib-. uted under the will. The rights of all parties cannot be protected except by a conversion of the whole estate into money.

The will provides that, after the decease of the widow, who was executrix, all the estate should be converted into money. It does not in terms specify the person who shall do this; but, as the testator clearly intended that both the real and the personal estate should be sold for the purpose of carrying out the provisions of the will, and as steps in the administration of the estate, and as the administrator *de bonis non* with the will

annexed is the only person who can convert the personal property into money, we are of opinion that by necessary implication the will gives him *virtute officii* the power to sell the real estate left by the testator. *Chandler* v. *Rider*, 102 Mass. 268. *Blake* v. *Dexter*, 12 Cush. 559.

The real estate held by the testator at his death has been sold by his executrix under the authority of a resolve of the Legislature, and as a substitute for it other real estate has been purchased by her with the proceeds. The resolve provides that she shall invest the proceeds " in the manner prescribed in said will of said William Barrows (for the investment of the proceeds of his said real estate) for the use of said Betsy Burrows, during her life; and, on her decease, for the uses and purposes in said will limited and set forth." Resolves of 1838, *c.* 91. Upon making the purchase of the substituted estate, said Betsy Burrows executed a declaration that she held said estate in the said manner and for said uses and purposes.

We are of opinion that she took only a life estate in the land purchased by her; that it was held in the same manner and for the same purposes as the land for which it was substituted; and that the power of the administrator *de bonis non* to sell, attached and applied to it.

We are therefore of opinion that the plaintiff, as administrator *de bonis non*, should sell this estate and distribute the proceeds among those entitled to it by the will, or to their assignees.

Connected with this distribution is the only remaining question in this case, as to the share of W. F. Stetson. His conveyance to Stevens is in form a deed of his interest in this land; but it was clearly intended as an assignment of his interest in the land under the will of his grandfather, as he had no other interest in it; and in equity it operates to assign his interest in the money received from the conversion of the real estate. His share therefore belongs to Story and Drake.

*Decree accordingly.*