### HELEN M. BUTTERFIELD *vs.* EDWARD REED.

Middlesex.　November 17, 1893. — January 5, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Flowage — Devise — Deed — Adverse Use — Non-user and Abandonment of Easement — Evidence.*

A testator by his will gave to his daughter A. the use, improvement, and income of a certain estate, and at her death he gave the estate to her surviving children in fee, but, if no child should survive her, then to the children of his son in fee; and further provided as follows: "And in order to render more clear my

intentions as it regards the disposition of certain portions of my real estate, my wish and desire is that so much thereof as I have devised with limitations shall be and remain in my family at least during the generation which succeeds me, if no longer." A. afterwards·conveyed to B., by a deed in which her children joined, the estate in question, which included a mill privilege, and "also the privilege of flowing the lands" adjacent. The testator's son mentioned in the will had a child living. *Held*, in an action by the owner of the servient estate against B. for flowing his land, that B. took a good title under his deed.

Cutting hay, digging out muck, enlarging and using springs upon land, and occupying a portion of it for a hen-house and hen-yard, by the grantee of the land and his predecessors in title for more than twenty years, is not such an adverse use of the land as will extinguish a right to flow the land not exercised during that time.

A right of flowage acquired by grant is not lost by mere non-user.

It cannot be ruled that the filling of the raceway, by consent of the owner of a mill privilege, is a conclusive act of abandonment of the right to flow adjacent land, nor that the putting of a wheel into the wasteway is not a user of the easement, but the question of abandonment, in an action for flowing the servient estate, is for the jury.

In an action for flowing the plaintiff's land, if he relies upon an abandonment of the easement by the defendant's predecessor in title, the predecessor may testify to his intent in doing certain acts as bearing upon the question of abandonment, and may also testify that he paid his tax on the property as a tax on a mill privilege.

Tort, for flowing the plaintiff's land, situated partly in Lexington and partly in Burlington, on the southerly side of the Middlesex Turnpike, so called. Trial in the Superior Court, before *Bond*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff introduced in evidence a warranty deed of the premises in question, from Cyrus Conant and Darius Conant to her, dated August 28, 1883, containing a covenant that they were free from all encumbrances.

The plaintiff also introduced evidence that, upon the receipt of her deed from the Conants in 1883, she immediately took possession of the premises, which were then unflowed, and occupied them under her deed up to the time of the acts of the defendant complained of, which were on June 27, 1889; that during all of that time she cut the hay upon the land which the defendant has since caused to be flowed; that she underdrained the land by putting in drain tiles under the surface; that she also built a hen-house and made a hen-yard, covering about one half an acre, and used it for the purpose of keeping fowl during all of the time until the same was flowed by the defendant; that she also used the land for the purpose of taking out muck to put

upon her other land; that she also enlarged a spring into which to lower her milk to keep the same cool without using ice, and also prepared another spring for the use of the house on the premises, and drew water from the spring for the use of the house.

She also introduced evidence that, since the deed to one of her predecessors in title, Martin Beatty, dated June 22, 1860, Beatty and his grantees and their successors during all of the time had used and occupied all of the premises for the purposes of cutting hay and getting out muck, and using the springs, under their deeds; that during all of the time and down to June 27, 1889, the land had not been flowed so as to interfere with the above described use, to the knowledge of any of the parties; that formerly there was a mill on the northerly side of the Middlesex Turnpike, so called, on the Granger estate, so called, which was burned about forty years ago, and no mill had been erected upon the premises since that date, and the right of flowage had not been used in connection with the Granger estate for mill purposes since the mill was burned, and no use has been made of the water flowage privilege for any purpose since that time, except as hereinafter stated; that while the mill was in use there were two water passages through the Middlesex Turnpike, one for the water toward the west of the dam to the mill, which was made and used as a raceway for the passage of water to the water-wheel, the other, at which the dam was, through the turnpike about forty to sixty feet easterly of that, for the passage of the waste water; that in 1863 or 1864 one Charles Hudson, who was at the time one of the selectmen of Lexington, applied to Ann R. Randall, the defendant's grantor, to have her keep in repair the bridge over one of the openings or passageways for water through the turnpike, saying to her that if she would not do that they would fill up one of them; that she replied that she could not afford to, that she could not use the mill privilege, and did not know of any one she could let it to, and she should have to give it up and let them fill it; that they did fill the raceway passage solid, and it had so remained filled since that time; that the wasteway passage at that time had no dam, and only a mud-sill on which the dam formerly was at the southerly side of the turnpike, and when the raceway was so filled the water ran over that mud-sill and over an apron made of boards from the mud-

sill under the bridge through the turnpike, raising the water to the top of the mud-sill, where it had remained from that time to the time when it was raised by the defendant, except as hereinafter stated; that about four or five years ago one Frank Fogg, who claimed to be a riparian proprietor, but in no way connected with the defendant or his grantors, attempted to dam up the water by putting boards upon the mud-sill so as to raise the water in the pond some eight or ten inches; and that the plaintiff forbade his doing so, and took away the boards that he had put up, claiming that the water would injure her property and the grass growing there, and he desisted.

The plaintiff also introduced evidence that she, by her husband, took away said obstruction under a claim of right; that her husband, as her agent, some three or four years ago, lowered the pond below the mud-sill by digging under the same and taking away the board apron, claiming a right so to do; that the lowering was done for the purpose both of drawing the water off from her land, and also for the purpose of finding the body of a boy who had been drowned in the pond; that the mud-sill was about ten feet south of the turnpike on the land of the plaintiff; that on June 27, 1889, the defendant built a dam upon the mud-sill, and flowed the land which the plaintiff and her grantors had occupied since 1860, as herein before stated; and that the plaintiff forbade his building a dam or raising the water, which he claimed the right to do.

The defendant, in the support of his claim of the right to do the acts in question, put in a quitclaim deed to himself from Ann Rebecca Randall and her only surviving children, Josephine A. Randall and Annie H. Randall, dated February 19, 1889, of a parcel of land "with a mill privilege," situated partly in Burlington and partly in Lexington, on the northerly side of the Middlesex Turnpike, "also the privilege of flowing the lands formerly of Swethen Reed, on the southerly side of said Middlesex Turnpike, agreeably to the grant of said Reed to Thomas Locke." To the introduction of this deed the plaintiff objected, on the ground that the plaintiff was in possession of the premises claiming a fee, and that Mrs. Randall was disseised at the time of giving the deed. The judge admitted the same; and the plaintiff excepted.

The defendant also introduced in evidence a deed dated December 26, 1817, from Swethen Reed, who then owned the plaintiff's premises, to Thomas Locke, of a right of flowage of the premises; also several deeds from the successors in title to Locke, in all of which the right of flowage was conveyed in terms; also the will of Thaddeus Monroe, one of the various grantees, which was admitted to probate on April 14, 1846, and the material portions of which are as follows:

"I also give to my said daughter Rebecca Ann Randall [sic] the use, improvement, and income of my Granger estate, so called, situated in said Lexington; also the use, improvement, and income of my Porter farm, so called, situated partly in Lexington and partly in Woburn, with right of cutting off the wood when she may think proper so to do. The two last mentioned bequests are to be subject to the life estate to my said wife, as expressed in the bequests to her. And at the decease of the said Rebecca Ann Randall [sic], I give and devise the two last mentioned estates to such child or children as may be born of her body, if any such shall survive her, share and share alike in fee simple. But if no child or children shall survive her, then to the child or children of my son, George Monroe, share and share alike in fee simple. And in order to render more clear my intentions as it regards the disposition of certain portions of my real estate, my wish and desire is that so much thereof as I have devised with limitations shall be and remain in my family at least during the generation which succeeds me, if no longer."

The plaintiff then contended that, by the will of Thaddeus Monroe, this property was left as a contingent remainder; and that the deed of Mrs. Randall and her daughters conveyed no interest, right, or title to the defendant. The judge ruled that it conveyed the life interest of Ann Rebecca Randall to the defendant. The plaintiff then requested the judge to rule that, by the last clause of limitation in the will, she was precluded from conveying her life interest to him. The judge declined so to rule, and ruled that this right of flowage was given to Mrs. Randall, after the death of her mother, for her life; that she gave the defendant the right under that will to exercise the right of flowage; and that she could convey it to him if it still existed, that is, if it had not been lost in any way. The plaintiff excepted.

Ann R. Randall testified, as a witness for the defendant, that, at some time within twenty years after the mill was burned, she employed one Bean to put in a wheel under the bridge left by the town over the wasteway, and to raise the dam by putting boards upon the mud-sill so as to flow the pond to high-water mark; that she saw afterwards that he had put in an under-shot wheel placed down near the apron before spoken of, so that the ordinary running of the water from the pond would turn the wheel, and she saw that the pond was raised above the mud-sill, but could not say how much; that she did not know that the wheel was used for any purpose, but it might have been used for turning a grindstone; that she did not know how long it remained there, or who took it away and tore down the dam; that she never saw it but once, and could not give the date, but she thought that, when that was put up, both of the openings through the turnpike were in existence.

The defendant introduced no evidence of any other use of the dam or mill privilege after the burning of the mill, as hereinbefore stated.

The defendant asked Mrs. Randall the question, "Did you ever intend to abandon the right of flowage that you had?" to which the plaintiff objected. The judge overruled the objection and admitted the answer, and she answered, "I did not." Also the question, "You intended to preserve it always?" to which she answered, "O, yes sir, always." Also the question, "And did you, so far as you know?" to which she answered, "I did." The defendant also asked the witness, "Whether she paid her tax on that property as a mill privilege," to which the plaintiff objected. The judge permitted her to answer, and she answered, "Why, I did not think it was anything but a mill privilege." To all of which the plaintiff excepted.

Mrs. Randall also testified that, when one of the openings in the dam was filled up as above stated, she gave her permission on the express understanding that her rights in the mill privilege were not to be affected thereby; and that Hudson told her at the time that her rights would not be affected by such filling up.

The defendant also introduced other evidence tending to show that the dam was raised by Mrs. Randall in 1878, within twenty years from the destruction of the dam; that within three or four

years before December 1, 1891, the plaintiff's husband came to
see Mrs. Randall about taking muck out of the pond, and she
told him she was willing to have him take the muck if he would
flow the pond up to high-water mark so as to preserve her rights
in the mill privilege, as she testified; and that he agreed to do so.

It was admitted that Mrs. Randall had but two children, and
that George Monroe had at least one child living.

The plaintiff requested the judge to rule as follows:

" 1. Upon all the evidence, the defendant took no title to the
right to flow the plaintiff's land by the quitclaim deed from the
Randalls to him.

" 2. Upon all the evidence, the plaintiff is entitled to a verdict
in her favor.

" 3. The cultivation of the land claimed to be covered by this
easement of flowage by those in rightful possession and occupa-
tion under a grant of the premises during the non-user of the
easement by the owner thereof, which grant was not made in its
terms subject to such easement, is an act inconsistent with such
easement, and is adverse to the right thereto.

" 4. If Mrs. Randall assented to the doing of any act in con-
nection with this pond or mill site in question, the necessary ef-
fect of which would be to take away or substantially impair the
easement of the flowage, that would be a conclusive act of the
abandonment, and the filling of the flume or raceway with which
the water-wheel connected with this right of flowage had always
been used would be such an act.

" 5. The putting of a wheel in a place where the motive water-
wheel had never been, and in a place fitted for a wasteway and
not fitted for a flume or raceway, where only a wheel could be
permanently maintained, would not be a user of the easement.

" 6. The entering into possession by the plaintiff of all the
premises under a deed of warranty, without mention of any en-
cumbrance or easement, and the holding occupation of all the
same, was a disseising of Mrs. Randall, and any deed of hers while
so disseised of the easement would be void."

The judge declined to give either of the instructions requested.
With reference to the fourth request, the judge instructed the
jury that, inasmuch as there was a conflict of testimony as to
the interview between Mrs. Randall and the selectmen, they

should determine what took place between them as to filling in the raceway, and also whether Mrs. Randall at that time consented to the doing of any act by the selectmen which was inconsistent with the continued existence of the right of flowage, and which showed an intention on her part to abandon the right of flowage.

With reference to the fifth request, the judge instructed the jury that a use of the easement consisted in flowing to some extent the land of the plaintiff; and that the putting in and use of a water-wheel at the wasteway, and the work done by Bean, might be considered by the jury upon the question of abandonment.

The judge also gave full instructions as to the effect of a non-use of the easement, and as to what would constitute an abandonment of the right of flowage, and a possession of the land of the plaintiff adverse to such right of flowage, to which no exceptions were taken.

The judge also submitted the following questions to the jury:

" 1. Has there been any abandonment of the right of flowage which Mrs. Randall owned as appurtenant to the land described in the deed to the defendant?

" 2. Has the right of flowage which Mrs. Randall owned as appurtenant to the land described in the deed to the defendant been lost by the adverse possession of the plaintiff, or those under whom she claims? "

The jury answered each question in the negative, and returned a verdict for the defendant; and the plaintiff alleged exceptions.

*R. Lund*, for the plaintiff.

*P. H. Cooney*, for the defendant.

MORTON, J.    The defendant justifies under his deed. The plaintiff contends that he took under it no interest in the premises described in it.    But we think it is clear that he did.    Mrs. Randall took under her father's will a life estate, which she could and did convey to the defendant by the deed, and the two daughters took the remainder in fee subject to the contingency that it would go to the children of the son if they died before their mother.    It is too well settled in this State to admit of question now that such an interest may be conveyed; and there can be no question that it was conveyed by the deed in this case to the defendant.    *Putnam* v. *Story*, 132 Mass. 205.    *Dole* v. *Keyes*, 143

Mass. 237. *Dodd* v. *Winship*, 144 Mass. 461. *Wainwright* v. *Sawyer*, 150 Mass. 168. The interest of the daughters was not a mere possibility, but was a vested interest. *Putnam* v. *Story, ubi supra.* We see nothing in the extract from the will with which we have been furnished indicating an intention on the part of the testator that Mrs. Randall should hold the remainder in trust for the parties entitled to it. The attempted restraint upon alienation in the concluding clause is contrary to law, and ineffectual. *Hall* v. *Tufts*, 18 Pick, 455. *Blackstone Bank* v. *Davis*, 21 Pick. 42. *Gleason* v. *Fayerweather*, 4 Gray, 348.

The plaintiff contends, in the next place, that the grantors were disseised by her at the time when they made and delivered the deed to the defendant. But the nature of the defendant's right, being a right of flowage, was such that its continued existence was consistent with the use and occupation of the premises by the plaintiff. There was nothing in the nature of the acts done by the plaintiff upon the premises that was an interference with or adverse to the right of the defendant or his predecessors in title. So long as the defendant and his predecessors in title did not exercise the right of flowage, the plaintiff and her predecessors in title were at liberty to use the land. Doubtless the plaintiff and those who preceded her could have used the premises in so adverse and exclusive a manner that the lapse of twenty years would have barred the right of the defendant and those under whom he claims. But the use in the present case consisted in cutting hay, digging out muck, enlarging and using springs, and occupying a portion of it for a hen-house and hen-yard. There was nothing in all this that was adverse to, or infringed upon, the defendant's right. *Arnold* v. *Stevens*, 24 Pick. 106. *Barnes* v. *Lloyd*, 112 Mass. 224. The jury, under instructions not objected to as to what would constitute an adverse use, have found that the right of flowage has not been lost by adverse use on the part of the plaintiff and those under whom she claims. We think there was evidence warranting such a finding.

The plaintiff also contends that the right of flowage has been lost by abandonment. The right rests upon an actual grant. It is well settled that an estate or easement derived from an actual grant is not lost by mere non-use. *White* v. *Crawford*, 10 Mass. 183. *Arnold* v. *Stevens*, 24 Pick. 106. *Owen* v. *Field*, 102 Mass.

90, 114. *Barnes* v. *Lloyd*, 112 Mass. 224. There was evidence in the case that the right had not been abandoned. It was for the jury to say what weight should be given to the filling of the race- way. It could not be said that the consenting to it by the owner of the privilege was a conclusive act of abandonment, nor that the putting of the wheel into the wasteway was not a user of the easement. The jury, under instructions not otherwise objected to, have found that the right was not abandoned, and we think there was evidence justifying the finding.

Mrs. Randall was properly allowed to testify to her acts and intentions as bearing upon the question of abandonment. The question of abandonment is primarily one of intent; and when the intent of a party in doing or omitting to do certain acts is in question, he may testify to it as to any other fact. *Snow* v. *Paine*, 114 Mass. 520. In this view, the question whether she paid her tax as a tax upon a mill privilege was competent. We discover no error in the rulings or refusals to rule.

*Exceptions overruled.*