ROYAL C. TAFT *vs.* ALICE J. HENRY, administratrix, & others.

Worcester.   September 28, 1914. — October 23, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Equity Jurisdiction,* To compel conveyance of real estate. *Fraud. Equity Pleading and Practice,* Master's report.

If one desiring to purchase a parcel of land, in order to avoid an apprehended attachment or levy of execution, has the deed made to a third person who pays the purchase money, and takes from such third person a bond to convey the land to him on repayment of the amount of the purchase money with interest, and then gives a quitclaim deed of the premises to another person, and afterwards the whole of the amount of the purchase money with interest and all sums paid for taxes are repaid to the third person in whose name the title was taken, the grantee under the quitclaim deed can maintain a suit in equity against the holder of the title to compel a conveyance of the land to him, founding his suit on the bond given by the defendant to the plaintiff's grantor, which gives him a right against the defendant independent of any possible claim of fraud that might be made by the creditors of his grantor.

Where a suit in equity is referred to a master "to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request," the master has no authority to make rulings of law, and, if he attempts to do so, an exception to his assumed ruling does not bring the question of the correctness of such ruling before the court.

BILL IN EQUITY, filed in the Superior Court on February 3, 1899, and amended on January 29, 1901, to compel the conveyance to the plaintiff of a certain parcel of woodland in Mendon.

Albert F. Henry, the original defendant, died on March 1, 1902, and his death was suggested to the court. On June 16, 1911, the death of Jesse A. Taft, the original plaintiff, was suggested to the court, in a petition asking that Royal C. Taft, the sole heir of the original plaintiff and entitled to all his rights in the land in question, be substituted as plaintiff. This was allowed. On November 5, 1913, a motion was allowed admitting as the defendants Alice J. Henry, the widow of the original defendant and the administratrix of his estate, and also his children, who with his widow were his only heirs at law. On December 8, 1911, the case was referred to Frank N. Thayer, Esquire, of Blackstone, "as master, to hear the parties and their evidence and report his

findings to the court together with such facts and questions of law as either party may request."

The material facts reported by the master are stated in the opinion. The case was heard upon the pleadings and the master's report, and the defendants' exceptions thereto, by *Ratigan, J.,* who made a final decree overruling the defendants' exceptions to the master's report and confirming that report, declaring that the plaintiff, Royal C. Taft, was the true owner of the premises described in the plaintiff's bill and the same that were described in the deed of Stephen Cook to the defendant Albert F. Henry, dated March 7, 1876, and ordering that the defendant Alice J. Henry, as statutory heir of the original defendant, Albert F. Henry, deceased, and the other defendants, as the heirs at law of said Albert F. Henry, deceased, should deliver to the plaintiff, Royal C. Taft, a deed conveying all the right, title and interest which the said Albert F. Henry at the time of his decease had in and to the above described premises free from all incumbrances made or suffered by Albert F. Henry or the above named defendants; and further ordering that the plaintiff's costs be taxed in the sum of $142.50 as in an action at law. · The defendants appealed.

The case was submitted on briefs.

*R. B. Dodge & W. J. Taft,* for the defendants.

*W. Williams & S. D. Vincent,* for the plaintiff.

SHELDON, J.  This suit, originally brought against Albert F. Henry, is defended now by his widow and administratrix and by his heirs at law.  Henry, in March, 1876, having taken a deed of the premises described in the bill and having paid the sum of $450 therefor, gave shortly afterwards to one Southwick a bond by which he bound himself to convey those premises to Southwick on demand, one year after date, on payment of the same sum with interest.  Three years later, in 1879, Southwick gave to one Hobbs a quitclaim deed of the premises for the consideration stated therein of $200.  More than two years later, in 1881, Hobbs gave to Amariah A. Taft a quitclaim deed of the premises for the consideration stated therein of $30.50, which was an inadequate consideration.  All these deeds were duly recorded, and Hobbs and Taft had actual knowledge of the deed to Henry and of his bond to Southwick.  Taft died some eleven years after the deed to him, never having demanded a conveyance from Henry.  The plaintiff

is his heir at law. When the bill was brought, nothing remained to be paid to Henry of the agreed sum of $450, or for interest, or for taxes paid by him; but it does not appear when the final payment of such sums was made to him.

On these facts, the plaintiff is entitled to have the premises conveyed to him by the defendants unless some matter of defense is shown. *Putnam* v. *Story,* 132 Mass. 205, 213.

The defendants contend that the plaintiff, claiming under Southwick, is not entitled to a conveyance because Southwick, having himself bargained for the premises, caused them to be conveyed to Henry for the reason that he (Southwick) was at that time, as the master has found, "apprehensive that if he took title in himself to the premises . . . they would be either attached or levied on, either by reason of some pending execution obtained against him or some other legal liability he was under, and on account of this apprehension, to prevent his judgment or other creditors from getting any hold on this property and to ensure to himself the benefit of its purchase, he procured the deed of said premises to be made to said defendant Henry." It may be conceded that by this transaction Henry acquired an absolute title against Southwick; but that could not prevent Southwick from obtaining afterwards rights thereto from Henry or from enforcing such rights against Henry when obtained. The plaintiff's rights rest now upon the bond given by Henry to Southwick and are independent of any fraud contemplated upon Southwick's creditors.

It is not material whether the considerations for the conveyances from Southwick to Hobbs and from Hobbs to the plaintiff's ancestor were or were not adequate. It has not been shown how large a part of the amount to be paid to Henry then remained unpaid; it is not suggested that either of the conveyances was not made in good faith; and Henry could not complain that Southwick's rights had passed to others.

The defense of laches cannot be maintained. We do not know when the right of the plaintiff accrued by the full payment of the agreed price to Henry. Nor has the position of the defendants in any way been altered to their prejudice.

None of the defendants' exceptions can be sustained. Those that relate to findings of fact must be overruled because the evi-

dence has not been reported. Those that relate to rulings of law are not open, because the master was only to find the facts and not to rule upon their legal effect. But so far as the questions raised are material, the defendants have had the full benefit of them in considering what decree should be entered upon the facts reported.

What we have said covers everything that has been argued. The decree of the Superior Court must be affirmed with the costs of the appeal.

*So ordered.*