CLARA M. GILKIE *vs.* FRANKLIN F. MARSH, executor,
& others.

Suffolk.    March 10, 11, 1904. — July 21, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Devise and Legacy,* Construction.    *Estate Tail.    Words,* "Die without issue."

In a will executed and proved before St. 1888, c. 273, now R. L. c. 134, § 5, a devise
to a certain person and if he shall "die without issue" to the testator's heirs
passes an estate tail.

Under successive statutes since 1791, now R. L. c. 127, § 24, an entail can be barred
by a deed in common form.

A testator devised one half of the residue of his estate to a certain niece, providing
that if she should die and her husband should survive her the property should
go to her husband and after his decease to his children, and that if he should
leave no children it should go to the testator's heirs. At the testator's death,
the niece, her husband and a son of the niece and her husband were living.    The
niece's husband died before her and later the son died intestate and unmarried
during his mother's lifetime.    *Held,* that if the niece took a fee subject to be
divested, it had become absolute, and that if she took a life estate with a re-
mainder for life in her husband and a remainder in fee to such of his children
as survived him, the remainder vested absolutely in the son on the death of his
father and on the death of the son intestate and unmarried passed to his mother
as his heir giving her the whole estate in fee.

BILL IN EQUITY, filed May 6, 1903, by one of the heirs at law
of John G. Terhorst, late of Boston, deceased testate, in behalf
of herself and the other heirs at law of that testator, against
certain persons holding under a deed from George Wilner and
against the executor and the devisees under the will of Clara
Marsh, deceased, praying for the establishment of the alleged
title of the plaintiff and the other heirs at law of John G. Ter-
horst to certain real estate as devisees under item twenty-two
of his will, which item, with the exception of an additional
clause appointing executors, is quoted in full in the opinion.

In the Superior Court the case came on to be heard before
*Richardson,* J., who by agreement of all the parties reserved it
upon the pleadings and an agreed statement of facts for deter-
mination by this court.

John G. Terhorst died August 19, 1870.    His will was dated
November 2, 1867.    On October 31, 1870, George Wilner being

unmarried conveyed by deed his undivided interest in the premises to Anna Maria Bockmann. On May 6, 1881, Anna Maria Bockmann conveyed her interest in the premises to William H. Marsh, husband of Clara Marsh. William H. Marsh died on December 28, 1883. He left one child, Waldon G. Marsh, who died unmarried and intestate on February 4, 1894, leaving as his sole heir at law his mother Clara Marsh. Clara Marsh died on May 22, 1902, testate.

*A. P. Worthen,* for the plaintiff.

*P. A. Atherton,* for the defendants Thea McElroy and others.

*W. H. Powers & H. H. Folsom,* for the executor under the will of Clara Marsh.

BRALEY, J. It is manifest on an examination of the will under which the parties claim title to the real estate described in the bill that the testator expressed by its provisions a carefully matured plan for the disposition of his property, and in the carrying out of this design a large number of pecuniary legacies are first given to relatives either outright or in the form of annuities in terms carefully limited, followed by three bequests for religious and charitable purposes, with specific gifts to two of his nephews, and in each instance he states in well chosen language the nature and extent of the bequest; after this has been done and in completion of his purpose he provides for a nephew and niece not previously mentioned, to each of whom he gives one half of the residue of his estate.

This residuary clause is now submitted for our interpretation, and so much of it as affects the rights of the parties is contained in these words: "Item 22. I give and bequeath to my nephew George Wilner and to my niece Clara Marsh (maiden name Wilner) wife of William H. Marsh, all of the residue of my property, both real and personal and mixed after the within named legacies are paid. Should George Wilner die without issue, it is my will that his part of this last named legacy shall be divided equally among my heirs. Should my niece Clara Marsh die and her husband should survive her, then it is my will that her portion of the last named legacy shall go to her husband. After his decease to go to his children. If he should leave no children then it shall be divided equally among my heirs."

If no modification of the first sentence of this paragraph is made by the context, the words used import and are ample to give to each a fee simple as tenants in common. Gen. Sts. c. 92, § 5. *Leland* v. *Adams*, 9 Gray, 171. *Lincoln* v. *Lincoln*, 107 Mass. 590. *Crossman* v. *Field*, 119 Mass. 170. *Goddard* v. *Whitney*, 140 Mass. 92, 100. *Smith* v. *Rice*, 183 Mass. 251. *Dana* v. *Dana*, 185 Mass. 156, 158.

But if the whole article is to be construed to give effect if possible to every part, the language used differs in its reference to each devisee, and a construction which disposes of one branch of the title may not be found sufficient to define the nature and extent of the other, and the first inquiry presented is to what extent the words "should George Wilner die without issue . . . his part of this . . . legacy shall be divided equally among my heirs," qualify and limit the estate given to him.

The primary object of the testator was to make provision for his unmarried nephew, and he may properly have considered that if he married and had issue they should take in succession and enjoy the benefit of this portion of his estate; and it is the contention of the plaintiff that if no children were born to be benefited he then intended to make a full disposition of the estate himself, and thus gave a fee to the first taker limited upon his dying without lawful issue living at the time of his death, with a remainder in fee to the heirs of the testator, which would immediately vest if no children survived. Yet to adopt this where no language is used that affords the slightest modification of the phrase "die without issue" would entirely disregard the use of words which at the testator's death and unaffected by St. 1888, c. 273, now R. L. c. 134, § 5, had acquired by judicial determination a definite legal meaning, and by construction are said to have become a rule of property, and when employed by the testator must be treated as used by him in their technical sense. *Ide* v. *Ide*, 5 Mass. 500, 501. *Wight* v. *Thayer*, 1 Gray, 284, 286. *Allen* v. *Ashley School Fund*, 102 Mass. 262, 264. *Brown* v. *Addison Gilbert Hospital*, 155 Mass. 323, 326. *Siders* v. *Siders*, 169 Mass. 523, 525. 4 Kent Com. 278, n. 1, where many of the cases are collected.

And when he provided that the estate should go over, this meant that if George Wilner left a child or children surviving

him such child or children should take the estate after their
father as his heirs; and if the whole clause is construed, the
estate in fee simple of the first devisee is cut down to an estate
in fee tail, which is created by implication, as these words are
equivalent to " without leaving heirs of the body," and con-
template what is known as an indefinite failure of issue and
it cannot take effect as an executory devise because void for
remoteness.   *Parker* v. *Parker*, 5 Met. 134.   *Hayward* v. *Howe*,
12 Gray, 49, 51.    *Nightingale* v. *Burrell*, 15 Pick. 104, 111.
*Hall* v. *Priest*, 6 Gray, 18.    *Loring* v. *Blake*, 98 Mass. 253,
259.

By our laws since St. 1791, c. 60, § 1, one of the incidents
attaching to such an estate is the right of a person seised of
lands thus held to bar the entail by a deed in common form, and
when the tenant in tail conveyed his undivided interest in the
various parcels of real estate devised to him by his uncle, the
deed operated to cut off any remainder expectant thereon, and
vested in the grantee an indefeasible title which is now held by
the defendants.    Rev. Sts. c. 59, § 3.    Gen. Sts. c. 89, § 4.
Pub. Sts. c. 120, § 15.    R. L. c. 127, § 24.    *Hall* v. *Thayer*,
5 Gray, 523.    *Collamore* v. *Collamore*, 158 Mass. 74.

Nor is any discussion required of the litigation that arose after
George Wilner's death to have the deed declared invalid because
fraudulently obtained, and the property decreed to belong to the
heirs of the testator, and which was terminated by a decree
establishing the conveyance; for the plaintiff does not renew
the original contention that the deed was procured by fraud, or
claim that it was not sufficient to pass such title as the grantor
had, and bar the entail, if under our construction of the devise
an estate tail was created.

But if this disposes of one moiety of the residue, the part
devised to Clara Marsh does not fall within it, as the language
used, neither by its form of expression, nor by implication, im-
ports an intention to limit the estate to the heirs of her body.

At the testator's death, his niece, her husband and son, were
living, and as they are all included in the devise, his intention
that this property should go to the family in some form becomes
reasonably clear; but it is susceptible of more than one con-
struction, and as each leads to the same conclusion there is no

occasion to decide whether one is to be preferred to the other as the more correct exposition.

It can be said that when he devised a fee by words which gave to her an absolute estate, he intended that her interest should vest at his death, as this is followed by substitutional provisions for the disposition of the estate in the event of her dying before her husband, as well as, upon his death, before their son, who then would be the last survivor, if there were no other children living. *Howland* v. *Slade*, 155 Mass. 415, 416.

By the words " should my niece Clara Marsh die," his purpose was to prevent a lapse of the devise if she should not outlive him, in which event the other members of the class would take in the order of succession ; and these words therefore may be construed as meaning that the estate was to vest if she survived the testator, and, having survived him, she took under the will an estate in fee. *Briggs* v. *Shaw*, 9 Allen, 516. *Crossman* v. *Field*, 119 Mass. 170. *Goodwin* v. *McDonald*, 153 Mass. 481. *Seaver* v. *Griffing*, 176 Mass. 59, 63.

If, under any view, she took a fee in the first instance, subject to be divested upon the happening of subsequent events, the expectant estate of the heirs would then depend on the failure of children, which event did not occur. As the son did not take unless he survived his father, so the latter acquired no title if he died before his wife ; and, as she survived him, the contingency upon which her estate would have been divested never arose, and she held the fee at her death. *Brightman* v. *Brightman*, 100 Mass. 238. *Kimball* v. *Tilton*, 118 Mass. 311.

. Or by the other construction, the estate given may be treated as limited to his niece for life, remainder for life to her husband, with a remainder in fee to such of their children as survived their father.

If, instead of limiting the remainder after the life estates to the surviving children of his nephew, the testator had used the word " heirs," it would be doubtful whether he did not intend that those who should take were to be ascertained as of the death of the second life tenant; but their son, and, as it eventually appeared, the only child of the marriage, was living at the testator's death, and comes within the description employed, and as he intended to provide for him, the son took a remainder in

fee subject to the contingency that it would go to the testator's heirs if he died before his father, and that his interest might be affected by the birth of brothers or sisters, who, if they also survived, would share the fee with him.   But when he survived his father, the estate became absolute, subject to the life estate of his mother, and as he died intestate and unmarried in her lifetime, she took the fee upon his death as his heir.   *Belcher* v. *Burnett,* 126 Mass. 230, 231.   *Putnam* v. *Story,* 132 Mass. 205. *Butterfield* v. *Reed,* 160 Mass. 361, 368.   *Shaw* v. *Eckley,* 169 Mass. 119.   Pub. Sts. c. 125, § 1, cl. 4.   See also *Gardiner* v. *Guild,* 106 Mass. 25.

As the heirs at law never became seised, under the twenty-second article of his will, of any part of the real estate of the testator, the bill cannot be maintained, and must be dismissed.

*Bill dismissed with costs.*