JOSEPH A. LOVERING, administrator, *vs.* FRANCIS A.
BALCH & others.

Worcester. October 2, 1911. — October 17, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Devise and Legacy,* What estate. *Will,* Construction.

A plain gift in a will will not be modified by uncertain language of a codicil to
any greater extent than such language expressly requires.

A father of three children, who was not trained in the refinements of language, in
1869 executed a will in which by apt language he created a life estate of sub-
stantially all of his estate consisting of both real and personal property for the
benefit of his wife with a remainder to his three children. One of his daughters,
who then was unmarried, subsequently married and in 1875 became grievously
sick and had not recovered in 1876, when the testator made a codicil providing
as follows : " Whereas In making a division of my property among my children I
wish if my daughter shall die leaving no child or children, that there be a trustee
appointed by the Judge of Probate to take charge of the share that falls to her
by the provisions of my will and that her husband, my draw the income, and
use said income as his own, but the Principal shall be kept in trust till his death,
when the money kept in trust shall be divided between my other children and
their heirs in equal division according to legal Decent." The testator died in
1876, leaving the daughter surviving him, and, the testator's widow having died,
a complete division of his estate was made and the daughter received one third
of it. In 1910 the daughter died childless, leaving her husband surviving. *Held,*
that, taking into consideration all the circumstances, including the condition of
the statutes as to rights of a husband in the estate of his wife when the codicil
was made and when it took effect, it was apparent that the codicil was intended to
be operative only in the event that the daughter died childless before the testator,
and therefore that it did not operate to make the title to the property which she
had received in the distribution of her father's estate less than absolute.

BILL IN EQUITY, filed in the Probate Court for Worcester
County on October 16, 1910, by the administrator of the estate of
Ellen M. Pierce, late of Leominster, for instructions as to what
disposition should be made by him of property which his in-
testate had received under the will and codicil of her father,
Francis Balch, late of Leominster. The defendants, besides the
Attorney General of the Commonwealth, were the husband and
the heirs at law and next of kin of Ellen M. Pierce.

The contention of the heirs at law and next of kin, as stated
in their answers, was that under the will and codicil of Francis
Balch, quoted in the opinion, in the event that Ellen M. Pierce

should die leaving no child or children, the share given to her under the will should be subject to a life interest in her husband, George A. Pierce, with vested remainder in the other children of the testator and their heirs share and share alike.

The contention of the husband of the intestate, George M. Pierce, was that under the circumstances Ellen M. Pierce acquired an absolute title to the property which she received under her father's will, that it was not subject to a mere life estate in his favor, and that on her death he was entitled to his statutory share therein.

The case was reserved by *Loring*, J., upon the bill and answers for determination by the full court. The facts are stated in the opinion.

*J. A. Lovering*, administrator, *pro se.*

*R. W. Nason*, (*C. F. Worcester* with him,) for Francis A. Balch and others.

*J. W. Healey*, for the defendant Pierce.

RUGG, C. J.  Francis Balch executed a will in 1869, by which he created a life interest of substantially all his property, consisting of both real and personal estate, for the benefit of his wife, and gave the remainder to be equally divided between his three children, Ellen, Ravella and Oscar. Ellen, then unmarried, subsequently married, and in the autumn of 1875 was grievously sick, and had not recovered in January, 1876, when the testator executed a codicil as follows: "Know all men by these presents, that I, Francis Balch, of Leominster, in the County of Worcester and Commonwealth of Massachusetts having made my will, do hereby make a codicil to this my last will and testament; Viz: Whereas In making a division of my property among my children I wish if my daughter Ellen Maria Pierce shall die leaving no child or children, that there be a trustee appointed by the Judge of Probate to take charge of the share that falls to her by the provisions of my will and ·that the said George S. Pierce, her husband, my draw the income, and use said income as his own, but the Principal shall be kept in trust till his the said George's death, when the money kept in trust shall be divided between my other children and their heirs in equal division according to legal Decent. I autherize

the Executors named in my will to act as in case of this my Codicil."

The testator died in 1876, and in that year his will and codicil were duly allowed. A complete division of his estate was made, and the daughter Ellen took possession of one third of his estate after the death of her mother and has changed its investment, and died in 1910 childless, survived by her husband, George S. Pierce, mentioned in the codicil. The question to be decided is the nature of the estate given the daughter Ellen.

The familiar rule in the interpretation of wills is to ascertain the intent of the testator from the words used, reading them in the light of the circumstances under which he employed them, and then give effect to that intent, unless prevented by some rule of construction which has become fixed and unyielding. A will and codicil are to be read together as one instrument, speaking as of the date of the testator's death. It is plain that by the will an unqualified estate was given to the daughter, Ellen. The controversy centres about the effect of the codicil. It is urged that its fair intendment is to cut down this absolute estate to a life estate in case the daughter survived her mother, the share to be divided after the death of her husband among the testator's kindred. This construction involves too violent a modification of the language used to be fairly warranted. In order to adopt it, one must say that the codicil gave the daughter only a life estate with remainder to surviving children, and this wholly by implication. The plain gift of the will is not to be modified by the uncertain language of the codicil to any greater extent than is expressly required. *Bassett* v. *Nickerson*, 184 Mass. 169. *Pitts* v. *Milton*, 192 Mass. 88. The testator shows by the provision in the will for the benefit of his wife that he knew how to create a life estate when that was his design. These considerations render impossible the construction that a life estate was created. It is argued next that the language gives to Ellen a fee determinable upon her death, leaving no children then alive, with an executory devise over to the husband for life with remainder to testator's other children. *Hooper* v. *Bradbury*, 133 Mass. 303, is relied upon as an authority. The language of the will there under consideration

was different in the decisive respect of a plain indication of intent by the testator that the first donee should take in no event an absolute estate, and that a trustee should be provided to hold during her life. It does not govern this case. Nor do any other of the many cases where such a construction has been . adopted appear to be controlling.*

The difficult point in the present case is whether the language of the codicil cuts down the absolute gift of the will, or whether it was intended to be effective only in the event that the daughter Ellen without leaving issue should predecease the testator. The situation of the testator and the state of the law of descent and distribution at the time are important factors bearing upon the ascertainment of his intent. His daughter had been very sick, and had suffered a relapse, and had not recovered at the time the codicil was executed. If she should die before him, her husband would receive nothing from the testator's estate. The language of the codicil makes plain the testator's desire that the son in law should share to some extent in his bounty. Indeed, this appears to be the dominant purpose of the codicil. It is the thought which strikes one first in reading its terms. It is only when one indulges in the subtleties of speculation as to the possible meanings of language that other interpretations come to mind. As the law stood, both when the codicil was executed and when it was allowed, the daughter, if she survived the testator and died testate, never having had children, could have deprived her husband against his protest of all her real estate and all but one half her personal property. Gen. Sts. c. 108, §§ 9, 10; c. 94, § 16; c. 91, § 1. *Burke* v. *Colbert*, 144 Mass. 160. *Silsby* v. *Bullock*, 10 Allen, 94. Apparently, under these statutes the husband's right under similar circumstances, in case of her intestacy, would have been confined to her personal property. See St. 1877, c. 83. The rights of a

---

* *Brightman* v. *Brightman*, 100 Mass. 238. *Whitcomb* v. *Taylor*, 122 Mass. 243, 250. *Schmaunz* v. *Goss*, 132 Mass. 141, 145. *Hooper* v. *Bradbury*, 133 Mass. 303, 306. *Welch* v. *Brimmer*, 169 Mass. 204, 211. *Dorr* v. *Johnson*, 170 Mass. 540. *Gilkie* v. *Marsh*, 186 Mass. 336, 340. *Blanchard* v. *Blanchard*, 1 Allen, 223, 230. *Richardson* v. *Noyes*, 2 Mass. 56. *Hubbard* v. *Rawson*, 4 Gray, 242. *Homer* v. *Shelton*, 2 Met. 194, 199. *Ide* v. *Ide*, 5 Mass. 500, 503. *Burbank* v. *Whitney*, 24 Pick. 146, 155. *Nightingale* v. *Burrell*, 15 Pick. 104, 113.

husband in the estate of his deceased wife were then appreciably less than under the present statutes. See R. L. c. 132, § 1; c. 135, § 16, as amended by St. 1906, c. 129, § 1; c. 140, § 3, cl. 3, as amended by St. 1905, c. 256.

It being plain that the testator was kindly disposed toward his daughter's husband, and desired to make some beneficial provision for him in case he should be a widower at the testator's decease, it is not likely that he had also an intent to restrict beyond the somewhat narrow limits then established by law his rights in the estate of his wife in the event that she survived the testator. The testator's dubious phraseology does not readily lend itself to the expression of such a purpose. From the spelling and construction of the other parts of the will, it is apparent that the testator was not trained in the refinements of language. He was more likely to have gone straight to the expression of a single determination than to have phrased a sentence with careful consideration of its bearings in the light of several different contingencies. For these reasons it seems that the codicil was intended to be operative only in the event that the daughter Ellen died before the testator, and that the words employed will more readily effectuate this intent than any other. *Donnell* v. *Newburyport Homœopathic Hospital,* 179 Mass. 187. *Briggs* v. *Shaw,* 9 Allen, 516. *In re Hayward,* 19 Ch. D. 470. The rule laid down in *Britton* v. *Thornton,* 112 U. S. 526, 533, is not applicable to the facts here disclosed.

*Decree of Probate Court affirmed.*