CHARLES Z. SOUTHARD & another, trustees, *vs.* ROXA S. SOUTHARD & others.

SAME *vs.* SAME.

Suffolk.   January 20, 23, 1911. — December 8, 1911.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Devise and Legacy,* Vested interest.   *Trust,* Termination, Restraint upon alienation. *Res Judicata. Judgment. Estoppel. Probate Court.*

By the provisions of a will certain parcels of real estate were devised to trustees among other things to divide the net income therefrom into halves and to pay one fourth of one half to five designated grandchildren of the testator, and one of the other three quarters of this half to each of three of his children, and, on the termination of the trust in a certain way, the will read, "I give devise and bequeath said three estates," one undivided fourth to each of the designated children of the testator, " to have and to hold to them and their heirs and representatives," and one undivided fourth to the five designated grandchildren " the survivors and survivor of them in equal proportions one fifth part to each — or the whole to the last surviving one if but one should then survive. My meaning and intention being that my said grandchildren the survivors and survivor of them shall together take the same share or portion thereof as their late mother would have taken if living; to have and to hold the same to them and their heirs forever. In case at the time when said three estates shall become free of mort-

gage as aforesaid my said grandchildren shall all be deceased, I give, devise and bequeath said one fourth part in fee simple to the other devisees under this will, the survivors and survivor of them." A residuary clause gave the rest and residue of the estate to " the same persons and in the same proportions as I have given the three estates aforesaid . . . except . . . not to be in trust but an absolute bequest and devise." *Held*, that the interest of the children and grandchildren vested in interest at the death of the testator and was to vest in possession at the termination of the trust.

In a suit in equity for instructions brought in 1910 by trustees under a will proved in 1856, it appeared that by the provisions of the will three designated parcels of real estate, subject to mortgages which were described, were devised to trustees, and among the conditions of the trust were provisions, that the trust should not be terminated until " the mortgage now existing upon each estate respectively as aforesaid, and the mortgage or mortgages which may hereafter be put upon each estate' respectively by my Trustees as hereinafter provided, if any, shall be fully paid and discharged," that one half of the net income from the estates should be set aside as a sinking fund to be applied " as soon as, and as often as the same can legally and properly be done, toward the payment and discharge of said mortgages," and that the trustees might rebuild, in case buildings on the estate were destroyed, or tear down and rebuild, and improve and repair at their discretion, and if necessary might further mortgage the estates for such purposes, and might re-mortgage in case the payment of any mortgage became necessary before its payment could be compassed by the sinking fund. The income, and the principal of the trust on its termination, were devised to certain persons in language which this court held to convey interests which vested in interest at the death of the testator. The provisions of the will had been carried out by successive trustees until a short time before the filing of the bill in the present suit. *Held*, that the termination of the trust was postponed until the payment and discharge not only of the mortgages originally upon the estates, but also of such mortgages as the trustees at any time subsequently in their discretion might place thereon, and therefore that the property was rendered inalienable for an unreasonable period and that the trust should be terminated.

Where trustees under a will, which provided that one half of the net income from the trust estate should be set aside as a sinking fund ultimately to be used to pay certain mortgages on the trust property, for at least twenty-five years in accounts filed in the Probate Court have treated as capital and not as income a share of the estate assigned to them by a former trustee, who also was a beneficiary of the estate, as security for a promissory note covering an amount of trust funds in the sinking fund misappropriated by him, and the beneficiaries have assented in writing to the accounts, and decrees have been made confirming all such accounts and also a decree has been made, from which no appeal was taken, confirming an account of the delinquent trustee filed by the executor of his will after his death, one who has succeeded to the interest of several of the beneficiaries who so assented to the allowance of the accounts is barred from maintaining, in a suit in equity by the trustees for instructions, that the share thus assigned to the trustees should have been treated by them as income in the sinking fund and used with its accumulations to discharge the mortgages.

TWO BILLS IN EQUITY, filed in the Supreme Judicial Court on October 6, 1910, by trustees under the wills of John Rayner and

of his daughter Harriott E. Edmands, both late of Boston, for instructions.

The will of John Rayner was proved on August 11, 1856. The first and second clauses dealt with formal matters. By the third clause three parcels of real estate in Boston, called respectively the " Crowninshield Estate," which was situated at the corner of Elm Street and Hanover Street, the " Odin Estate," situated on Hanover Street between Court Street and Elm Street, and the " Tufts Estate," situated on Union Street, Blackstone Street and North Federal Court, subject to mortgages upon them the amounts of which were stated, were given to trustees " To Have and to Hold the same to the uses and trusts following, namely: — to take charge of, superintend and manage said three Estates, keeping the same in suitable and proper repair, and to collect and receive the income and profits thereof; and after deducting therefrom all necessary outlays and expenses and a reasonable compensation for their services, to pay over one-half part of the net annual income thereof as follows, namely: — One fourth part of said half part to my Grandchildren, Harriet Elizabeth Edmands, Elleen Catharine Edmands, Thomas Franklin Edmands, Elizabeth Catharine Edmands, and John Rayner Edmands, children of my said son-in-Law, Benjamin F. Edmands, and my late Daughter Catharine Rayner Edmands, in equal proportions, — one fifth part to each; — my meaning and intention being that my said Grandchildren, the survivors and survivor of them shall together take the same share or portion thereof, as their late mother would have taken, if living, to be for their sole use and benefit during the continuance of these trusts."

The fourth clause of the will gave " Another fourth part of said half part to my daughter, Harriott Edmands Rayner Edmands, the present wife of . . . Benjamin F. Edmands." The fifth clause gave " Another fourth part of said half part to my son, John J. Rayner." The sixth clause gave " The remaining fourth part of said half part to my daughter, Frances Ellen Rayner."

The seventh clause of the will read as follows: " As it is my Will and direction that no one of said three Estates shall be at present divided or partitioned amongst the persons entitled thereto as hereinafter provided, but shall remain undivided until

the mortgage now existing upon each Estate respectively as aforesaid, and the mortgage, or mortgages which may hereafter be put upon each Estate respectively by my Trustees as hereinafter provided, if any, shall be fully paid and discharged, so that such Estate shall be wholly free from said incumbrances: Therefore, believing that my Estate will not be called upon to pay said mortgages until sufficient income shall be derived by my trustees under the following clause, — Now for the purpose of paying and discharging said incumbrances, it is my Will, and I hereby direct my Trustees to set apart the remaining half part of the net annual income of said three Estates as a sinking Fund, and to apply the same so soon as, and as often as the same can legally and properly be done, towards the payment and discharge of said mortgages; they having full power and authority to apply said half part of said income accruing from each of said Estates respectively towards the payment and discharge of the mortgage upon that Estate, or all said half part of said net annual income accruing from all said three Estates towards the payment and discharge of the mortgage upon any one of said three Estates, or part to one and part to another, as my Trustees shall think best for the interest of those entitled to said Estates as herein provided; said half part of said annual income to be safely and profitably invested by my Trustees from time to time until required for the aforesaid purpose, in such manner as they shall think best, except that they shall not invest in Railroad Stocks."

The eighth clause of the will read as follows: "In case the buildings now standing upon said three Estates, or upon any one of them, shall be destroyed by fire or other casualty before the incumbrances thereon shall have been discharged, or if before that time by reason of decay or depreciation in value, or if for any cause, my Trustees shall deem it expedient and best for the interests of those entitled to said Estates as herein provided, to remove said buildings or any portion of them, and to erect others in their stead, or to make any improvements in or additions to the buildings now on said three estates, then my trustees shall have full power and authority so to do, and for the purpose of defraying the expenses of such erections, improvements or additions shall apply thereto such part of said last mentioned half

part of said net annual income as may then be on hand and unapplied towards the payment, and discharge of said mortgages, so far as the same may be necessary; and in case a further sum shall be required for that purpose, my Trustees are authorized and empowered to mortgage the Estate upon which said buildings shall be erected, or such improvements or additions shall be made, so far as may be necessary to raise such further sum, as fully and effectually as I myself could do, if living."

The ninth clause of the will read as follows: " In case the holder or holders of any or all of said mortgages upon said three Estates shall require payment of the same at maturity, or before they shall have been paid in the manner already provided, and shall be unwilling to await the payment of the same in the manner above provided, then my Trustees are authorized and empowered to mortgage the Estate or Estates upon which the mortgage or mortgages so required to be paid now exist, to raise such sum as may be required for that purpose; which last named mortgage or mortgages, or other mortgage or mortgages which may be given by my Trustees in place thereof, shall be paid and discharged in the same manner as is already provided for the payment and discharge of said original mortgages."

The tenth and eleventh clauses of the will provided that " When said mortgages upon said three Estates or any one of them shall have been paid and discharged in the manner before provided, so that said Estates, or any one of them shall be free from incumbrances, and this fact shall be made to appear by the accounts of my Trustees relative to said Estates, or either of them, duly and properly returned and filed in the Probate Office where my Estate shall be settled, then I give, devise and bequeath said three Estates and each of them as they shall respectively become free from incumbrance as before provided," one undivided fourth part to the grandchildren mentioned in the third clause, mentioning them again by name, to " the survivors and survivor of them, in equal proportions, — one fifth part to each, — or the whole to the last surviving one, if but one should then survive, — my meaning and intention being that my said Grandchildren, the survivors and survivor of them shall together take the same share or portion thereof as their late mother would have taken, if living; to Have and to Hold the same to them and their

Heirs forever. In case at the time when said three Estates shall become free of mortgage as aforesaid, my said Grandchildren shall all be deceased, I give, devise and bequeath said one fourth part in fee simple to the other Devisees under this Will, the survivors and survivor of them." The twelfth clause gave " Another undivided fourth part thereof to my Daughter, Harriott Edmands Rayner Edmands . . . to Have and to Hold the same to her and her Heirs and representatives forever; provided that should my said Daughter leave children or a child, the father of such children or child shall have no interest whatever in said one fourth part." The thirteenth clause gave "Another undivided fourth part thereof to my son, John James Rayner, to have and to Hold the same to him and his heirs forever; " and the fourteenth clause gave "The remaining undivided fourth part thereof to my Daughter, Frances Ellen Rayner; to Have and to Hold the same to her and her Heirs and Representatives forever," with an added provision of the same import as that in the twelfth clause.

The fifteenth clause is quoted in the opinion. The sixteenth to the twenty-first clauses contained pecuniary legacies and a specific bequest of personal property.

The twenty-second clause read as follows: " All the rest and residue of my Estate, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I give, devise and bequeath to the same persons and in the same proportions as I have given the three Estates aforesaid, and subject to all the restrictions and reservations before mentioned, except that it is not to be in trust but an absolute bequest and devise."

The remaining clauses of the will related to formal matters.

The will of Harriott E. Edmands was proved on March 9, 1863. The first two clauses related to matters merely formal. The third clause gave to trustees all of the estate of the testatrix, real, personal and mixed, "and especially my undivided fourth part of three certain parcels of real estate," describing them, " devised to me " by the will of her father, the trustees to " collect and receive my share or portion of the net income of said Three parcels of real estate, as the same shall become due and payable under and in accordance with the provisions of said

Will," and to pay it to her husband during his life; " And in case the said three parcels of real estate, or any one of them, shall, during the natural life of my said husband, be and become free and discharged from the incumbrances thereon named in said Will in the manner therein provided," the trustees were directed to manage the interest which then would come to them, as well as the rest of the estate of the testator, and to pay the net income to her husband during his life.

By clauses four to seven inclusive, the trustees, if at the death of the husband of the testatrix the mortgages on the three parcels of real estate previously described, or any of them, had been paid off and the trust under the will of John Rayner terminated as to such real estate, were directed to divide the share thus coming into their possession into three parts, dividing one third among the same persons described in the third clause of the will of John Rayner, one third to John J. Rayner and one third to Frances Ellen Rayner. The exact wording of the fifth clause was as follows: " One undivided third part thereof to my nieces Harriett Elizabeth Edmands, Ellen Catharine Edmands, Elizabeth Rayner Edmands, and my nephews, Thomas Franklin Edmands, and John Rayner Edmands, children of my said husband and my late sister Catharine Rayner Edmands. The survivors and survivor of them in equal proportions, one fifth part to each, or the whole to the last surviving one, if but one should then survive; Provided however that if any one or more of my said nephews or nieces shall then have deceased having previously married and leaving a child or children then living, such child or children shall take the same share or portion as their deceased parent would have taken, if living, And if at the time when said three estates shall respectively become free of mortgage as aforesaid all my said nephews and nieces shall have deceased, leaving no child or children, I give and devise said one-third part in fee simple to the other devisees under this Will, the survivors and survivor of them."

By the eighth clause it was provided that, if at the death of the husband of the testatrix any part of the real estate still was held in trust by the trustees under her father's will, the income received therefrom should be divided into three parts by the trustees under her will and distributed " to the same persons or

their legally appointed Guardian or Guardians in the same proportions as I have given the three estates aforesaid, until said incumbrances shall be fully paid and discharged; upon the happening of which event I give, devise and bequeath said three estates to the same persons and in the same proportions and in the same manner as I have hereinbefore given said three estates;" and by the thirteenth clause of the will the residue was disposed of in the same manner.

Other clauses of the will related to formal matters.

Other facts are stated in the opinion.

The cases were consolidated and were reserved by *Braley*, J., for determination by the full court.

The cases were argued at the bar in January, 1911, before *Knowlton*, C. J., *Morton*, *Loring*, *Braley*, & *Rugg*, JJ., and afterwards were submitted on briefs to all the justices then constituting the court except *Loring*, J.

*G. F. Williams*, for Roxa S. Southard.

*O. D. Young*, (*W. E. Tucker* with him,) for Francis C. Welch, trustee under the will of Thomas F. Edmands, and Horton Edmands.

BRALEY, J. The trustees bring these petitions for instructions as to their respective duties under the wills of Harriott E. Edmands and of her father, John Rayner. It is contended by the defendant, Roxa S. Southard, a great-granddaughter of the testator, who with the defendant, Horton Edmands, a great-grandson, are his only surviving lineal heirs, that the trust created by John Rayner's will offends the rule against perpetuities, and also imposes an illegal restraint upon alienation, and, there now being no interests which have not vested or been determined, that it should be terminated and the property conveyed in fee.

The bulk of the testator's estate consisted at his death of three parcels of realty, each subject to a mortgage. In the third clause of his will he devised the equities to trustees to whom the petitioners have succeeded, and directed that the income and profits be collected, and after payment of all necessary outlays and expenses, with a reasonable compensation for themselves, one half of the net income thus ascertained should be paid in certain proportions to his children and grandchildren, who are specifically named, and the remaining half was to be

used in payment of the mortgages until they were extinguished. By the twenty-second or residuary clause, the residue of the estate was devised and given to "the same persons and in the same proportions as I have given the three estates aforesaid, and subject to all the restrictions and reservations before mentioned, except that it is not to be in trust but an absolute bequest and devise." Having created the trust he directs in the seventh clause, "that no one of said three estates shall at present be divided or partitioned amongst the persons entitled thereto as hereinafter provided," and then in the tenth, eleventh, twelfth, thirteenth and fourteenth clauses divides the principal subject to the trust into four parts, and names the grandchildren who are to take a quarter, and his son and two daughters who each take one of the remaining three quarters. We find no limitation over, and the rule of construction adopted in *Gibbens* v. *Gibbens*, 140 Mass. 102, 104, and affirmed in *Stanwood* v. *Stanwood*, 179 Mass. 223, and in *Minot* v. *Purrington*, 190 Mass. 336, 338, " that a vested remainder will be held to have been intended, in the case of a devise to the testator's children, unless there is something sufficient to show to the contrary," should be applied. The construction is not affected by the closing paragraph of the eleventh clause, that if when the trust ceased ". . . . my said grandchildren shall all be deceased, I give, devise and bequeath said one-fourth part in fee simple to the other devisees under this will, the survivors and survivor of them." If the grandchildren all died the devise over to his children which in title was a vested interest depending upon a contingency would become a vested remainder to take effect in possession when the mortgages were paid. *Blanchard* v. *Blanchard*, 1 Allen, 223, 227. *Belcher* v. *Burnett*, 126 Mass. 230, 231. *Shaw* v. *Eckley*, 169 Mass. 119, 121, 122. *Heard* v. *Read*, 169 Mass. 216, 220. *Gilkie* v. *Marsh*, 186 Mass. 336, 341. *Clarke* v. *Fay*, 205 Mass. 228.

But, while the nature of their title has been discussed without reference to the provisions for the application of income in payment of the outstanding mortgages, the objects of the trust are so connected and interdependent that its character and validity are to be determined from all the language employed by the testator. We accordingly turn to the seventh, eighth, and ninth clauses of the will.

The seventh clause directs that the three mortgaged estates shall not be partitioned amongst the persons entitled thereto as "hereinafter provided, but shall remain undivided until the mortgage now existing upon each estate respectively," or mortgages given in substitution "shall be fully paid and discharged," and "now for the purpose of paying and discharging said incumbrances, it is my will, and I hereby direct my trustees to set apart the remaining half part of the net annual income of said three estates as a sinking fund, and to apply the same as soon as, and as often as the same can legally and properly be done, towards the payment and discharge of said mortgages." If this clause, with the fifteenth clause that " my children and grandchildren will not, I am sure, misunderstand my motive in making the foregoing provisions relative to said three estates, my sole object being to render the same of the greatest value to them, which end, I believe, will be best attained by a compliance with those provisions," are separated from the context, there would be ground for the argument urged by Horton Edmands, that the testator's primary purpose was to provide for the payment of specific debts outstanding at his death so that his children and grandchildren might come into possession of unincumbered estates.

But the further provisions in the eighth and ninth clauses cannot be disregarded. By the eighth clause while the replacement of buildings which might be destroyed by fire or other casualty, and their preservation by suitable repairs from depreciation and decay may be treated as matters of necessary administration, the general authority empowering the trustees to erect in their discretion new buildings, and the placing of new mortgages to defray the expense, and by the ninth clause, that they may substitute new mortgages for a like amount to those in force at his death if the mortgagees demand payment, far exceed a direction to trustees to apply income in payment of designated mortgagees until their debts are extinguished. The trustees could reconstruct, improve and enlarge the buildings, and erect new buildings and mortgage the trust estate to pay for the outlay. The term, therefore, would end, and a conveyance under the tenth clause of the will could be made only when the mortgage debts thus created had been satisfied. It doubtless was the testator's intention, when the entire will is considered, to provide only for his chil-

dren and grandchildren.   But if the devise of vested estates, and
the language of the fifteenth clause, indicate that the testator in-
tended that the devisees ultimately should come into possession
.with the power of absolute disposition, yet the prescribed period
of redemption as expressed does not exclude the contingency that
none of them might survive its termination.   Whatever might
have been accomplished by the consent of all parties, yet under
the terms of the trust they could not compel the trustees to unite
with them in a conveyance which would pass to the purchaser
the legal and equitable title, or procure a discharge of the mort-
gages by payment of the principal.   The purpose is not to enable
the trustees to hold only the legal title, and to manage and pre-
serve the estate, and pay the net income at stated periods to the
beneficiaries until they reached a certain age, and then to convey
to them in fee, or to whomsoever they might in writing appoint,
or upon the decease of all of them, to distribute the property
among their heirs at law to take by right of representation.
*Sparhawk* v. *Cloon*, 125 Mass. 263.   *Sears* v. *Choate*, 146 Mass.
395.   *Claflin* v. *Claflin*, 149 Mass. 19.   *Dunn* v. *Dobson*, 198
Mass. 142.   See also *Lathrop* v. *Merrill*, 207 Mass. 6, 9.   It was
made their duty to preserve the property from foreclosure, and
not to convey until the trust had been executed as the testator
directed.   The inhibition from making any conveyance of an
estate in fee simple until the mortgages had been previously sat-
isfied from income, rendered the property inalienable for an un-
reasonable period and the trust should be terminated.   *Sears* v.
*Putnam*, 102 Mass. 5.   *Bartlett, petitioner*, 163 Mass. 509, 512.
*Winsor* v. *Mills*, 157 Mass. 362.   *Howe* v. *Morse*, 174 Mass. 491,
505, 506.   *Brown* v. *Burdett*, 21 Ch. D. 667.

By the will of Harriott E. Edmands she devised her quarter
share to trustees to hold until the trust in her father's will was
determined.   The equitable life estate given to her husband
under the third clause, having fallen in by his death, and the
trust having been ended, the fifth, sixth and seventh clauses dis-
posing of the fee become operative.   We are asked to construe
the fifth clause which disposes of one third to her nephews and
nieces, who are specifically named, and all of whom survived
their aunt and uncle.   But, as they took a vested remainder,
whether the devise over to their unborn children is void for re-

moteness is of no consequence. *Cushman* v. *Arnold*, 185 Mass. 165, 168, 169. *Peabody* v. *Tyskiewicz*, 191 Mass. 317, 321. *Ball* v. *Holland*, 189 Mass. 369.

The children and grandchildren are deceased and it appears that by descent and devise Roxa S. Southard, Horton Edmands and Francis C. Welch as he is trustee under the will of Thomas F. Edmands have succeeded to the title of the original devisees, and there are no contingent interests. The trustees under the will of John Rayner are to convey the property to them discharged of the trust, to hold as tenants in common according to their proportionate shares, subject, however, to the mortgages on two of the parcels, the validity of which is not questioned. *Bowditch* v. *Andrew*, 8 Allen, 339. *How* v. *Waldron*, 98 Mass. 281. The undistributed net income, if any, accruing since the death of J. Rayner Edmands, or which has accumulated, pending the controversy, is to be divided among them in the same proportions.

The defendant, Roxa S. Southard further contends that " the termination of the trust, according to its terms, has been thwarted by the failure of the trustees to realize upon security belonging to the sinking fund, to wit, the assigned interest of John J. Rayner in the estate " and " that after his assignment, a proper administration of the trust would have annually turned into the sinking fund John J. Rayner's income therefrom." * Having been one

---

\* The argument of the defendant Roxa S. Southard on this point, as stated in her brief, is as follows : " Upon this point, this defendant calls the attention of the court to the fact . . . that the present value of the one third interest of John J. Rayner in the trust estates is one third of the present net value of the estates, namely $426, 266.07, or $142,088.89. The present outstanding mortgages are $105333.33. Therefore the admitted present value of the security held in the trust fund by the trustees against the debt of a former trustee is $37,000 in excess of the mortgages now outstanding.

" The debt of John J. Rayner was on December 31, 1875, $44591.47.

" Assuming that the then beneficiaries had a right (which this defendant denies) to waive interest on this indebtedness up to December 2, 1881, it can hardly be questioned that from that time to the present such indebtedness should bear interest at the legal rate, and such interest from December 2, 1881 to December 2, 1910 amounts to $77,589.16, making a total indebtedness from John J. Rayner belonging to the sinking fund of the John Rayner trustees of $122,180.63.

" It is unquestionable that it was the duty of the trustees, immediately upon the assignment by John J. Rayner of his interest to secure his indebtedness, to realize upon the security and make good the depleted sinking fund."

of the original trustees, he appropriated while in office an appreciable part of the income, and pledged his share to replace the deficiency. But an examination of the instrument executed by him in connection with the conditions leading to the pledge, and the subsequent release of the accrued interest leaves no doubt as to the intention of the parties. The purpose was to protect the other beneficiaries from the loss which would ensue upon alienation by him of his share of the estate, and that either by will or upon intestacy his interest, which was more than sufficient to repay the indebtedness, should pass to them. John J. Rayner having died intestate, without issue, and his widow, who has since deceased, in consideration of an annuity for life having released her rights, the result desired was effected, and his share, having vested in the surviving beneficiaries as his heirs at law, was not converted into income but continued to constitute a part of the principal. *Pope* v. *Farnsworth,* 146 Mass. 339. *Preble* v. *Greenleaf,* 180 Mass. 79. It moreover having been thus treated by the trustees in their probate accounts with the assent in writing of the beneficiaries from whom she derives title, and of the mortgagees, for at least twenty-five years, the decrees passing and confirming their accounts, as well as the probate accounts of J. Rayner Edmands, who acted as one of the trustees presented by his executor, to which the parties did not assent but from which no appeal appears to have been taken, are conclusive and cannot be set aside or modified in these proceedings. *Bennett* v. *Pierce,* 188 Mass. 186. *Connors* v. *Cunard Steamship Co.* 204 Mass. 310.

The details and terms of the decree in each case are to be settled before a single justice. *Sears* v. *Hardy,* 120 Mass. 524, 542.

*Decree accordingly.*