`Honora M. Hayes & others *vs.* Walter R. Hammond
& others.`

Essex.     May 7, 1957. — June 26, 1957.

Present: Wilkins, C.J., Williams, Whittemore, & Cutter, JJ.

*Real Property*, Estate tail, Partition.    *Words*, "Die without issue."

A will made and effective in 1855 and containing the words "die without
issue" must be construed without regard to St. 1888, c. 273, now G. L.
(Ter. Ed.) c. 184, § 6.    [236–237]

A certain will made and effective in 1855 and containing provisions, ap-
plicable to the testator's real estate, that it should go to his widow for
life and then "in four equal parts" to his three daughters and a grand-
daughter and "their . . . heirs . . . and assigns forever," but that if
any of the four "should die without issue" her "part" should "de-
scend" to the survivors, contemplated a gift over of her "part" to
the survivors to take effect upon an indefinite failure of her issue; and
at the testator's death each of the four took, subject to the widow's life
estate, an undivided interest in fee tail and not in fee simple.    [237–238]

A partition ordered by a Probate Court in 1871 of real estate in which
several persons then held undivided interests in fee tail did not operate
to bar the estates tail and gave to each an estate tail in the portion
assigned to him.    [241]

An estate tail cannot be disposed of by will.    [241]

Petition, filed in the Land Court on September 27,
1954.

The case was heard by *Cotton*, J.

*John D. Malone*, (*James J. Fox* with him,) for the peti-
tioners.

*Raymond L. Cummings*, (*Ernest A. Harding & Robert W.
Reardon* with him,) for the respondents.

Cutter, J.    This is a petition for registration under
G. L. (Ter. Ed.) c. 185, as amended, of title to land in
Marblehead (hereinafter called the locus).    The petition
was filed September 27, 1954, and, as amended, has been
prosecuted by seven petitioners.    Answers filed in behalf of
numerous respondents deny the title of the petitioners and

claim that the respondents hold title of record to the locus.[1] The trial judge held that the respondents have a good title of record to the locus and ordered that the petition be dismissed. The petitioners duly saved exceptions to the denial of certain requests for rulings (discussed below). The case is before us upon the petitioners' substitute bill of exceptions, from which the following pertinent facts are summarized.

In 1830, John Girdler gained title to the Girdler Farm, which included the locus. He died on May 25, 1855, still owning the Girdler Farm. His will was dated March 23, 1855. Then (and at his death) he had a wife Betsey, three children (Lucy, through whom the petitioners claim, Deborah, and Rachel) and a granddaughter, Elizabeth, child of a son, who had theretofore died. By this will (after a life estate to his wife for her support and maintenance) he provided: "After the decease of my said wife Betsey, my will is that whatever remains of my Estate not expended by her, shall descend in four equal parts: to wit one part to my daughters, Lucy Ann Harris, one part to Deborah, one part to Rachel and the other part to Elizabeth Girdler, the child of my late son John B. Girdler, now deceased: To hold the same to them, their respective heirs, administrators and assigns forever: But if either of my said daughters or granddaughter should die without issue, then in such case my will is that such respective part or parts should descend in equal proportions to said surviving legatees or to their legal representatives."

Betsey Girdler, John's widow, died prior to 1871 when the three daughters and the granddaughter named in John Girdler's will, all of whom survived Betsey, filed a petition for a partition in the Probate Court "alleging [that] they held as heirs equal . . . shares in the estate of John Gird-

---

[1] Certain answers set up also adverse possession as an affirmative defence and some answers also set up laches. The trial judge did not make findings with respect to these issues. In his view of the case, the evidence on the issue of adverse possession (and presumably also laches) would become material only if his decision (that the respondents hold the record title to the locus) should be set aside. The facts with respect to these issues are not stated in this opinion.

ler, taking an one-fourth part each. The petition was as-
sented to by the four petitioners and their husbands." In
1874 the Girdler Farm was separated by the partition into
four lots of about thirteen acres each, the locus then being
assigned to Lucy A. Harris. Lucy died without issue in
1885 leaving the residue of her estate to her husband, who
died in 1900. It is indirectly under this will that the peti-
tioners claim. In their chain of alleged title (which need
not be summarized), it does not appear that the locus had
been mentioned of record from 1874 to 1953 in any con-
veyance or in any probate inventory.[1]

In 1908 various persons, through whom the respondents
claim, namely (1) Elizabeth Bessom, the last survivor (who
died in 1914) of the persons named in the residuary article
of John Girdler's will, (2) the grandchildren[2] of Rachel
Girdler High (one of John Girdler's daughters, who died in
1897, leaving issue), and (3) the heirs of Deborah Hooper,
another daughter (who died in 1907, leaving issue) of John
Girdler, joined in deeds, separating the locus into thirds,
which by the several grantees (and certain successors in
title) have since been conveyed and reconveyed, with the
consequence that, by such conveyances (which need not be
set forth in detail) of parts of the locus subsequent to 1908,
the respondents, in the aggregate, claim title to the whole
locus, directly or indirectly, under one or more of the parties
to the 1908 partition deeds. The premises have been im-
proved from time to time by persons for the time being so
claiming title to parts of the locus.

The trial judge held (1) that, under the residuary article

---

[1] From the trial judge's subsidiary findings we infer that no one claiming
under Lucy A. Harris's will had asserted, or seen any reason for asserting,
any claim to any interest in the locus during the whole period from Lucy's
death until 1953. Such assertions (in addition to the 1908 partition by deed
and the subsequent conveyances mentioned in the body of this opinion) were
made, however, during the period 1885 to 1953, by certain persons through
whom the respondents claim, by including mention of an interest in the locus
in various estate and guardianship inventories in 1902, 1904, and 1914.

[2] Mrs. High died in 1897 intestate leaving as her sole heir her son Girdler
High, who died intestate in 1900 leaving as his heirs his widow, Patience
High, and two children Thomas and Janet, both minors. In the 1908 partition
of the locus by deed, Patience signed the partition deed for herself and as
guardian of her minor children.

of John Girdler's will (quoted above), upon his death, each of his daughters and his grandaughter, Elizabeth Bessom, "took a fee tail in expectancy and upon the death of the wife Betsey a fee tail in possession"; (2) that the 1871 partition proceeding in the Probate Court operated to make "the daughters and granddaughter . . . tenants in tail in severalty of separate portions of the Girdler Farm"; and (3) that upon Lucy Harris's death in 1885 without issue, the "locus vested in fee tail in the three others, namely" Rachel High, Deborah Hooper, and Elizabeth Bessom.

1. The residue of John Girdler's estate after the life interest of Betsey was to "descend" in four equal parts, to Lucy, Rachel, Deborah, and Elizabeth, and their respective heirs. Each would then have taken an undivided one-fourth interest in fee simple in the Girdler Farm, were it not for the further provision that if any one (or more) of them "should die without issue, then . . . such respective part . . . should descend in equal proportions to said surviving legatees or to their legal representatives."

The will took effect on the death of John Girdler in 1855, prior to the enactment of St. 1888, c. 273 (now found in G. L. [Ter. Ed.] c. 184, § 6), which as to limitations effected by deed or will after April 30, 1888, provides that the words "die without issue" "shall, unless a contrary intention clearly appears by the instrument creating such limitation, mean a want or failure of issue in the lifetime or at the time of the death of such person, and not an indefinite failure of his issue." The statute[1] is not applicable to instruments executed prior to 1888. *Gilkie* v. *Marsh*, 186 Mass. 336, 338. *Lyman* v. *Sears*, 283 Mass. 404, 413.[2] Accordingly,

---

[1] The 1888 statute arose out of orders adopted by the House of Representatives directing respectively the consideration of the expediency (1888 House Journal page 129) of "regulating by statute the creation of estates tail by wills" and (1888 House Journal page 379) of "regulating the creation of estates tail by other instruments than wills." These orders were the basis of 1888 House Bill No. 274 which became St. 1888, c. 273, "An Act relating to estates tail."

[2] Although the principle of these decisions has been the subject of adverse comment by at least one text writer (see Powell, Real Property, § 340, at page 23), we follow the cases as representing the settled construction of the 1888 statute with respect to prior instruments.

John Girdler's 1855 will must be construed in accordance with principles of construction in effect prior to 1888.

The Massachusetts authorities, construing pre-1888 limitations applicable to land, have followed the common law view, that (in the absence of clear controlling provisions in the governing instrument showing a contrary intention), a gift over if A shall die without issue following a gift to A and his heirs, means that the gift over is to take effect upon the indefinite failure of A's issue. *Nightingale* v. *Burrell,* 15 Pick. 104, 109–115. *Wheatland* v. *Dodge,* 10 Met. 502, 505. *Terry* v. *Briggs,* 12 Met. 17, 22–23. *Malcolm* v. *Malcolm,* 3 Cush. 472, 481–482. *Hall* v. *Priest,* 6 Gray, 18, 20–21. *Allen* v. *Trustees of Ashley School Fund,* 102 Mass. 262, 264. *Brown* v. *Addison Gilbert Hospital,* 155 Mass. 323, 325–326 (where the rule is said "to have become a rule of property"). *Gilkie* v. *Marsh,* 186 Mass. 336, 337–339.[1] See Swain, Crocker's Notes on Common Forms (7th ed.) §§ 908–909.

With respect to real estate, such a gift over, in the event of the indefinite failure of the issue of the first taker, was construed to cut down and limit the interest of the first taker (even if expressed as a gift in fee simple) to an estate tail, so that the person entitled to the devise over has "a remainder in expectancy after the estate tail, and not an executory devise." *Brown* v. *Addison Gilbert Hospital, supra,* at page 326, and cases cited.[2] With respect to personal property, a gift to A and his heirs and personal representatives, but if A shall die without issue, then to B, was

---

[1] See also *Parker* v. *Parker,* 5 Met. 134, 138–139; *Weld* v. *Williams,* 13 Met. 486, 490–496. Compare *Ide* v. *Ide,* 5 Mass. 500, 501–502 (general rule was stated that "die without issue" in a gift over means an indefinite failure of issue, but the particular will was construed as intended to give the first taker an absolute estate), criticized in *Morris* v. *Smith,* 332 Mass. 34, 39, and *Gordon* v. *Gordon,* 332 Mass. 193, 195; *Brightman* v. *Brightman,* 100 Mass. 238 (use of word "survivor" in gift over apparently treated as rendering impossible gift over in default of issue to one who predeceased first taker); *Stone* v. *Bradlee,* 183 Mass. 165, 170 (definite failure of issue at death of first taker found, from language of particular will, to have been intended by testator). Compare also *Wight* v. *Thayer,* 1 Gray, 284, 286–287 (holding that a remainder after an estate tail "cannot take effect until the failure of issue in tail").

[2] A remainder interest in real estate to take effect at the termination of an estate tail is not too remote. See Gray, Rule against Perpetuities (4th ed.) §§ 111 (2), 447, 449.

construed to be an absolute gift to A. There cannot be an estate tail in personal property, and "the limitation over, being on an indefinite failure of issue, is too remote . . . and is . . . void." *Hall* v. *Priest*, 6 Gray, 18, 22. In *Hall* v. *Priest* it was said, with respect to a residuary clause making by a single provision gifts of realty and personalty, " . . . the words are to be construed in the same manner, as applicable to both species of property . . . the same words [importing a gift over upon an indefinite failure of issue] which, applied to real estate, will create an estate tail, when applied to personal property, will give an absolute interest." Compare Restatement: Property, § 269, comment h; Powell, Real Property, § 343 at page 46. Accordingly, even if the residue of John Girdler's estate included personal property (as it probably did), as to his real estate it gave to his three daughters and his granddaughter an undivided remainder interest in fee tail in the locus after the life interest in the widow in the absence of some substantial showing that the testator intended (a) a result different from that of the well settled pre-1888 rule declared in *Brown* v. *Addison Gilbert Hospital*, 155 Mass. 323, 326, and cases cited, or (b) that the gift over should take effect only in the event of an indefinite failure of issue either at or prior to (1) his own death or (2) the death of his widow.

We find in John Girdler's will no evidence of either intention. Obviously, the "construction of a will is to be ascertained by careful consideration of the entire document" and "too much weight must not be given to cases involving . . . other wills different in their content" (see *Old Colony Trust Co.* v. *Shackford*, 291 Mass. 361, 365). However, the residuary article of the Girdler will is in form closely similar to provisions which had been held to create estates tail in the earlier cases, some of which already have been cited (see, for example, *Nightingale* v. *Burrell*, 15 Pick. 104, 105, 114–115, decided before 1855 when John Girdler's will was made; *Hall* v. *Priest*, 6 Gray, 18, 19–20; *Hayward* v. *Howe*, 12 Gray, 49, 51–52). There is some indication in the will of

an intention to keep the property (dealt with by the residuary article) in the family, a result which perhaps would be facilitated by the interpretation (that estates tail were created) adopted by the trial judge. There is no express provision in the will (and one could easily have been included if such a result had been intended) requiring that the indefinite failure of issue must take place either (a) prior to the death of the testator or (b) prior to the death of the widow, Betsey, in order for the gift over to take effect.

The modern trend, with respect to instruments executed after the enactment of statutes like St. 1888, c. 273, may be to find that testamentary gifts over, upon the death without issue of a first or subsequent taker, were intended to take effect only if such taker should die without issue prior to the death of either the earlier taker or of a life tenant (if one is named). That trend does not appear to have been given effect in this Commonwealth (to the extent that it has been recognized) as early as 1855. Accordingly, in construing this 1855 instrument, we should not be guided by modern authorities expressing views greatly influenced by post-1855 developments.[1] The existence of the life estate in the widow, Betsey, under our earlier decisions, does not imply (in the absence of some real indication that the testator had such an intention) that the indefinite failure of the issue of any one of John Girdler's daughters (or granddaughter) must take place prior to Betsey's death, in order for the gift over to take effect. There were initial life estates in the instruments considered in *Hall* v. *Priest*, 6 Gray, 18, 19–21, in

---

[1] Restatement: Property, § 266, gives a narrower construction of "death without issue" than prevailed in Massachusetts in 1855, in the absence of a contrary intention exhibited in the particular instrument under consideration. Similarly, §§ 267, 268, and 269 do not state the common law rules in this Commonwealth, but are designed reasonably to reflect the supposed consensus of modern authority in this area, which obviously has been much influenced by statutory enactments in the several States. See Restatement: Property, c. 20, Introductory notes, pages 1317–1319, 1336; § 266, comments a, b (also 1948 sup.), c; Proc. Am. Law Inst. vol. XV, pages 236–241. For comprehensive discussions of this whole area of the law and its historical development, see the thorough article of Professor Joseph Warren, Gifts Over on Death without Issue, 39 Yale L. J. 332, and Am. Law of Property, §§ 21.49–21.53; Powell, Real Property, §§ 340–343; Simes and Smith, Future Interests (2d ed.) §§ 521–539.

*Hayward* v. *Howe,* 12 Gray, 49 (semble), and in *Allen* v. *Trustees of Ashley School Fund,* 102 Mass. 262. In none of these cases did the existence of the prior life estate lead to any suggestion by this court that the gift over on the death of the first subsequent taker without issue could not take effect unless that indefinite failure of issue occurred prior to the death of the life tenant.[1] We think that there is nothing to the contrary in *Boynton* v. *Boynton,* 266 Mass. 454, 459 (where with respect to a gift in trust, apparently of personal property, the court held that, under the particular instrument executed in 1911, the death "without issue" which would give rise to a gift over must take place prior to the final distribution of the trust, if the gift over was to take effect). We hold that at the death of John Girdler's widow, Betsey, his three daughters and granddaughter held undivided equal estates tail in the locus.

*Mills* v. *Blakelin,* 307 Mass. 542, relied on by the petitioners, is distinguishable, not only (1) because it dealt with a will made long after the 1888 statute had overcome any preference for inferring that an indefinite failure of issue was intended as the result of a gift over upon the death of a preceding donee without issue, but also (2) because, on the language of the particular will, the court (at page 545) found that the testatrix intended as "a purpose which dominates the rest of the provisions of her plan for the devise of her property" a devise to her surviving children in fee simple by a gift (page 543) to her three children "and if either . . . shall die without issue, his, her or their share or shares shall revert to the said children then living." The court in the *Mills* case, speaking of this dominating intention, construed the gift over as intended to take effect only if some of the testatrix's children predeceased her. In the light of the authorities relating to wills effective prior to

---

[1] See also *O'Mahoney* v. *Burdett,* L. R. 7 H. L. 388; Warren, Gifts Over on Death without Issue, 39 Yale L. J. 332, 346, 347; Simes and Smith, Future Interests (2d ed.) § 537. Compare *Re Roberts,* [1916] 2 Ch. 42, 48–49; *Christian* v. *Taylor,* [1926] A. C. 773. Compare Am. Law of Property, § 21.53; Powell, Real Property, § 343.

1888, we think no such dominating intention[1] is to be inferred from John Girdler's will.[2]

2. The trial judge correctly ruled that the only effect of the partition ordered by the Probate Court in 1871 was to turn the undivided estates tail of the 1871 petitioners into estates in "tail in severalty." *Allen* v. *Trustees of Ashley School Fund*, 102 Mass. 262, 264–265. See Restatement: Property, § 82, comment b (which states that, after a partition of an estate in fee tail, "the severed interests, as to each separate parcel, continue to be held as estates in fee tail"); Am. Law of Property, § 2.14. This principle is consistent with the spirit of the partition statute in effect in 1871, Gen. Sts. c. 136, §§ 48–78,[3] which does not expressly authorize the division of more than the interest which the parties actually had at the time of the partition decree.

Such a partition, on the authorities already cited, does not operate to cut off the estates tail. It does not constitute a common recovery, the ancient method of barring an estate tail (see *Nightingale* v. *Burrell*, 15 Pick. 104, 116–120; Am. Law of Property, § 1.9 at page 17) and it does not comply with the statutory method of barring an estate tail by a deed in common form executed by the holder of the estate tail (which gives the grantee an absolute estate in fee simple) as permitted in 1871 by Gen. Sts. c. 89, §§ 4, 11, and now by G. L. (Ter. Ed.) c. 183, § 45.

3. There appears to have been no conveyance by Lucy Girdler Harris, prior to her death in 1885, which would bar her estate tail. She could not dispose of her estate tail by will. *Hall* v. *Priest*, 6 Gray, 18, 24. Gen. Sts. c. 92, § 1, now G. L. (Ter. Ed.) c. 191, § 1. Accordingly, Rachel High,

---

[1] In *Mills* v. *Blakelin*, examination of the original papers shows that the possibility that an estate tail was intended was not argued, nor were the early decisions which govern the present case cited in the briefs.

[2] *Briggs* v. *Shaw*, 9 Allen, 516, *McInnes* v. *Spillane*, 282 Mass. 514, and *O'Reilly* v. *Irving*, 284 Mass. 522, also relied on by the petitioners, did not deal with a gift over upon death without issue. *Lovering* v. *Balch*, 210 Mass. 105, 107, contained special circumstances showing that a substituted gift in a codicil was intended to take effect only if a daughter, given an absolute estate by the will, should die before the testator.

[3] See for present partition statutes, G. L. (Ter. Ed.) c. 241. See *Clough* v. *Cromwell*, 254 Mass. 132, 134.

Deborah Hooper, and Elizabeth Bessom (all of whom survived Lucy) took in possession and in fee simple, as the result of Lucy's death without leaving any issue, a one-third undivided interest in the locus. By the division by deeds of the locus in 1908, it was divided among the respective parties to those deeds, through whom the respondents claim. The petitioners (whose claim is under Lucy Harris's will) have no title to the locus.

4. The exceptions of the petitioners were based on denial of their requests for rulings. Request numbered 1, that "upon all the evidence and the law a finding for the petitioners is warranted," could not be given, for, on the documentary evidence, the petitioners have no title to the locus. A request (No. 2), that the trial judge rule that Lucy Harris took a fee simple by John Girdler's will,[1] could not be given for reasons already stated. Requests (Nos. 3, 4, 5) that the respondents are concluded by the 1871 partition proceedings are disposed of by what has been said above about those proceedings. The trial judge correctly refused to pass upon other requests dealing with the question of adverse possession. These requests became irrelevant upon his correct decision that the petitioners had no title.

*Exceptions overruled.*

---

[1] A similar request was that the petitioners as remaindermen under Benjamin F. H. Knight's will are holders of title to the locus. This was properly denied on the authorities cited in part 1 of this opinion.